[Civ. No. 42479. Second Dist., Div. Three. May 22, 1974.]

WESTERN CONTRACTING CORPORATION,
Plaintiff and Appellant, v.
STATE BOARD OF EQUALIZATION, Defendant and Respondent;
DEPARTMENT OF WATER RESOURCES, Defendant and Appellant.

**COUNSEL**

Don A. Ladenberger and Lowell C. Kindig for Plaintiff and Appellant.

Evelle J. Younger, Attorney General, Carl Boronkay and Ernest P. Goodman, Assistant Attorneys General, Neal J. Gobar and Jane C. Goichman, Deputy Attorneys General, for Defendant and Appellant and for Defendant and Respondent.

**OPINION**

**POTTER J.**—Western Contracting Corporation (Western), an Iowa corporation, was the successful low bidder and was awarded a lump sum fixed price contract with the State of California, Department of Water Resources, for the construction of the Castaic Dam in Los Angeles

County. Subsequent thereto, effective August 1, 1967, our state Legislature increased the sales and use tax rate by 1 percent, and also added section 6376 to the Revenue and Taxation Code[1] providing an exemption from the effect of such increase.

At all times material to this appeal, said section 6376 read as follows: "There are exempted from 25 percent of the taxes imposed by this part the gross receipts from the sale of and the storage, use or other consumption in this state of material and fixtures, if the sale, storage, use or other consumption in this state of the material and fixtures are obligated pursuant to an engineering construction project contract or a building construction contract entered into for a fixed price prior to August 1, 1967.

"For the purposes of this section, tangible personal property shall not be deemed obligated pursuant to a contract for any period of time for which any party to the contract has the right to terminate the contract upon notice, whether or not the right is exercised."

Controversy as to the meaning of the exemption provided by section 6376 arose almost immediately. The board vacillated between competing interpretations until it received in December 1967 an opinion of the Attorney General, whereupon it made a final ruling construing the exemption as applicable only to "materials" and "fixtures" as those terms had previously been defined in the board's Ruling 11 (Cal. Admin. Code, tit. 18, § 1521), theretofore in effect for many years. As therein defined, "materials" meant tangible personal property "which when combined with other tangible personal property loses its identity to become an integral and inseparable part of the completed structure" (for example, cement) and "fixtures" meant "things which are accessory to a building and which do not lose their identity as accessories when placed or installed" (for example, plumbing fixtures). This interpretation excluded from the exemption other tangible personal property used or consumed in the performance of the contract such as construction equipment and the spare parts, tires, fuel and accessories necessary to the operation thereof.

Western disagreed with the interpretation made by the board insofar as it denied the exemption to the equipment and supplies. Faced with the prospect of an additional 1 percent tax burden upon its expenditure of many millions of dollars for the rental or purchase of numerous items of heavy equipment (such as earth movers and cranes) and for tires, fuel, oil, grease and repair parts during the projected four years' performance

---

[1]All references hereafter will be to Revenue and Taxation Code sections unless otherwise indicated.

under the contract, Western brought a declaratory relief action in March 1969 in the Los Angeles Superior Court (No. 927659), naming the department and the board as defendants.[2]

By its declaratory relief action, Western sought a determination: (1) that section 6376 provided an exemption from the increased sales tax rate with respect to the gross receipts from the sale or rental to it of the equipment used on the project, and the sale to it of the tires, fuel, lubricants, repair parts and other supplies consumed; (2) that in the event said exemption did not so apply, the contract between Western and the department provided for additional compensation to Western equal to the burden of the increased tax which was passed on to Western by its vendors; and (3) if the exemption was not applicable and the contract did not provide for reimbursement, the additional 1 percent levy constituted an impairment of its rights under the contract and the taking of property without due process of law.

Subsequent to the filing of the declaratory relief action, Western itself paid "sales and use" taxes, the increased amount of which totalled approximately $102,000 and made a claim for refund which was rejected by the board. It also sought administrative relief from the department to increase its compensation under the contract. The department ruled that the contract contained no provision for additional payment because of increased taxes.

After the board denied the claim for refund, Western filed a second action against the board (No. 986775), seeking to recover the $102,000 it had paid in higher taxes. The actions were consolidated[3] for trial between Western, the board and the department. Consolidated findings of fact and conclusions of law were made, but separate judgments were entered. As between Western and the board, the judgment in the declaratory relief action: (1) declared that section 6376 "does not exempt sales or use taxes arising from" the transactions in dispute, and (2) upheld the constitutionality of the imposition of the increased tax to such transactions. Between Western and the department, said judgment: (1) held insufficient the department's defense based upon a release given by Western and, on the merits, (2) declared that under the terms of its contract Western was not

[2]As originally filed, this suit named as plaintiffs two of Western's California suppliers. Their participation in the case requires no further mention, however, inasmuch as all appeals by any of them have been dismissed.

[3]Continental Leasing Corporation, a lessor of equipment to Western, brought a third action (No. 986787), seeking refund of sales tax paid by it. This action, which was consolidated for trial with Western's two lawsuits, does not require further discussion inasmuch as Continental's appeal has been dismissed.

entitled to be reimbursed for the increased tax burdens incurred. The judgment in the refund action against the board was that Western "take nothing."

Western appealed from those portions of the declaratory judgment adverse to it and from the judgment against it on the refund claim. The department filed an appeal from the portion of the judgment denying its defense based upon the release.

None of the appealing parties questions the findings of fact made by the trial court. The issues, therefore, relate to the propriety of the court's conclusions based thereon.

## Issues

There are three issues which require determination on this appeal. They are:

1. Did section 6376, properly construed, provide an exemption from the increase in sales and use tax with respect to the construction equipment and supplies utilized in the performance of Western's contract?

2. Does the contract between Western and the department provide for additional compensation to Western equal to the increased tax burden borne by it?

3. Is there an impairment of the obligation of Western's contract if the exemption is not applicable and it receives no additional compensation?

As will hereafter appear, other issues raised by the parties do not require resolution in view of the decision reached with respect to the above issues.

## Interpretation of Section 6376

Section 6376 has never been interpreted in any decided case brought to the attention of this court. The evidence of its legislative history is limited, consisting solely of a statement by Senator Coombs in the course of proceedings before the State Board of Equalization on November 8, 1967, to the effect that as originally drafted, the words "tangible personal property" appeared where the words "material and fixtures" appear in the first paragraph of the section as enacted. The change was made "during the course of the discussions of the Conference Committee" at the suggestion of a member of the staff of the board. The board argues that this history supports its interpretation of section 6376 because its staff member in recommending the use of the words "material and fixtures" had clearly in mind the meaning ascribed to them in Ruling 11. Assuming this to be a fact, it is of little help in the interpretation of the statute unless such

understanding was communicated to the members of the Legislature, and there is no evidence that it was.

A second argument advanced by the board also lacks merit. The board contends that the use and consumption of the construction equipment and supplies were not "obligated" under the terms of the contract with the department because the contract does not "describe the types of tools or equipment which must be used." However, section 6(g) of the contract generally requires the contractor "to provide and use on the work only such construction equipment and plant as are capable of producing the quality and quantity of work and materials required by the contract within the time or times specified." Consequently, though there may have been no specifications of the type described in section 6(h) of said contract "providing that construction equipment of a particular size or type is to be used," it is obvious that large amounts of massive construction equipment consuming vast quantities of fuel and other supplies were necessarily involved in the performance of the contract.

The more persuasive argument urged by the board is based upon the fact that Ruling 11 had been in effect and widely applied in the administration of the Sales and Use Tax Law for over 20 years at the time section 6376 was enacted. The propriety of the classifications of tangible personal property set forth in Ruling 11, including "materials" and "fixtures," had been judicially recognized as early as 1952 in *Gen. Elec. Co.* v. *State Bd. of Equalization,* 111 Cal.App.2d 180 [244 P.2d 427]. In view of these circumstances, it is "reasonable to assume" that the Legislature used the terms "advisedly and in the sense which had been given" them by the administrative ruling and the decision of the court. (*City of Long Beach* v. *Payne,* 3 Cal.2d 184, 191 [44 P.2d 305].)

It is, moreover, not necessary to refer to Ruling 11 to demonstrate that the change from "tangible personal property" to "material and fixtures" was intended to narrow the scope of the exemption. By no stretch of the imagination could construction equipment and supplies be considered "fixtures," and the meaning of "material" is well understood in the construction trade. For example, section 1 of the "Standard Provisions" of the contract between Western and the department defines materials as "Materials incorporated or to be incorporated in the work, unless otherwise clearly indicated," as does Ruling 11.

In response to the arguments of the board, Western urges two points. First, it argues that retention of the words "tangible personal property" in the second paragraph of section 6376 indicates an intention to establish an exemption applicable to all tangible personal property. This argument

is not persuasive. The second paragraph merely limits the circumstances under which use or consumption shall be deemed "obligated." It does not purport to deal with the classification of property to which the exemption may apply.

Western's second argument is based upon Senate Resolution No. 13 presented to the board at a meeting on November 8, 1967. This resolution, adopted in light of the board's restrictive interpretation of section 6376 in its memorandum dated August 10, 1967, declared that the Senate "did intend that such measure exempt from the application of the 1 percent sales tax increase all tangible personal property . . . ." The board voted 3 to 2 in favor of a motion to "comply with the request and comply with the intent of the Legislature—of the Senate—as they expressed it here in this Resolution . . . ." This determination was, however, never implemented and, after the board had requested and received an opinion of the Attorney General dated December 7, 1967, supporting its original interpretation, the board formally notified all contractors of the continued effectiveness of its original bulletin.

Western concedes that "the Senate Resolution did not have the force and effect of law." It urges, however, that it is a reliable indication of the intention with which section 6376 was enacted. We do not agree. Like any other act of the Legislature, section 6376 was a result of the joint action of the Senate and Assembly. If, as Western claims, the language employed in the statute was unsuited to such intent, the appropriate manner to correct the situation was an amendment adopted by both houses. This was, in fact, clearly recognized by the senators who presented the resolution to the board; they represented that such an amendment, which they were confident would be passed, would be introduced within two months. But no such bill was introduced, and despite the board's continued interpretation contrary to the claimed intent of the Legislature, section 6376 remained unchanged until the next increase in the sales and use tax rate was enacted in 1972. (Stats. 1972, ch. 1406, § 19, p. 2971.)

Section 36 of said chapter 1406, the exemption provision applicable to the new increase, substituted the words "material, fixtures and supplies" for the words "material and fixtures" in section 6376.

The post-enactment history of section 6376, therefore, actually favors the board's position more than it does Western's. The Legislature, with knowledge of the board's interpretation, was content to let it stand from 1967 to 1972, which was as long as the exemption relating to the 1967 increase had any significance. When it enacted the next increase, a broader exemption was made applicable to it; however, even this exemption did not

extend to "all tangible personal property." This is evidenced by the fact that after the change the board issued its Regulation 1521.5 construing the new provision; it defined "materials" and "fixtures" substantially as they were previously defined in Ruling 11 and defined "supplies" as "items of tangible personal property consumed in a one-time use directly in the performance of a construction contract" (giving as examples fuel and dynamite), but specifically excluded "tools and equipment, whether leased or purchased." Subsequent to this interpretation being placed upon it, section 36 of Statutes of 1972 was amended to clarify its applicability to both sales and use taxes but without in any respect modifying the description of personal property exempted. (Stats. 1973, ch. 208, § 61.)

Both the language and the legislative history, therefore, strongly support the interpretation urged by the board. In addition, section 6376 is a tax exemption provision. As such, it is to be narrowly construed. (*Santa Fe Transp.* v. *State Board of Equal.,* 51 Cal.2d 531, 539 [334 P.2d 907]; *Good Humor Co.* v. *State Board of Equal.,* 152 Cal.App.2d 873, 879 [313 P.2d 640].) The trial court's interpretation of it was therefore correct.

### *Additional Compensation Under the Contract*

The trial court construed the construction contract as not providing for additional compensation on account of the increased tax burden. We agree.

The contract provides generally that "The contract price . . . of the work shall include full compensation for all costs incurred." (§ 9(b).) More specifically, with respect to the subject of taxes, section 4(h) states: "Except as otherwise provided in the Special Provisions, the contract prices shall include full compensation for all taxes which the Contractor is required to pay, whether imposed by federal, state, or local government, and no tax exemption certificate or any other document designed to exempt the Contractor from payment of tax will be furnished to the Contractor by the Department."

To support its claim for extra compensation, Western relies upon the provisions of the contract relating to "changes in the contract." Section 7 of the contract deals with this subject matter. An examination of its provisions in this respect, however, indicates clearly that the changes for which an adjustment in compensation may be authorized are only those which affect the amount or quality of the work.

The engineer is authorized to order "such changes in the contract as are required for the proper completion of the work." (§ 7(b).) Such changes

may result in additional compensation whenever they cannot "be fairly and reasonably paid for at contract prices." (§ 7(e).) A change in the tax rate does not qualify under this provision because it has nothing whatever to do with "proper completion of the work."

Provision is also made for notification of "changed conditions" which, if they "materially increase or decrease the costs of any portion of the work," may be the subject of an adjustment to compensation. (§ 7(h).) However, the kinds of changed conditions provided for are (1) "Subsurface or latent physical conditions at the site of the work differing materially from those represented in this contract," and (2) "Unknown physical conditions at the site of the work of an unusual nature differing materially from those ordinarily encountered." A change of the tax rate does not fall into either of these categories.

The trial court's interpretation of the construction contract is therefore correct. In view of this determination, it is not necessary to pass upon the department's contention raised by its appeal that a release signed by Western, covering all claims and demands arising under and by virtue of the contract, included its claim for additional compensation on account of the enhanced sales and use tax rate. The court, therefore, expresses no opinion on this question.[4]

### Claimed Impairment of Contract

Western contends that the imposition of the additional tax burden upon it in combination with the denial of its claim for further compensation unconstitutionally impairs the state's obligation under its contract. The constitutional provisions relied on are: (a) article I, section 10 of the Constitution of the United States, (b) the due process clause of the Fourteenth Amendment, and (c) article I, section 16 of the Constitution of California.

Inasmuch as Western received the full fixed-price specified in its contract for the work, this contention amounts to the assertion that any increase in the tax burden incident to performance constituted an impairment of the obligation of its contract. Western concedes that an identical contract between it and a private owner would not be unconstitutionally impaired by any such increase. That concession is clearly required by well established case authority. In *National Ice etc. Co.* v. *Pacific F. Exp. Co.,* 11 Cal.2d 283 [79 P.2d 380], the application of the original sales tax law to a sale

---

[4]In view of the fact that this question has become moot and this court has not approved the trial court's decision in this respect, the judgment will be modified to eliminate it.

at a fixed price entered into before its enactment, though it imposed a substantial burden upon the retailer, was held not to impair the contract. The court said: "the principle of law is well established that the existence of an executory contract between or among two or more individuals presents no obstacle to the right or power of the state to levy or to impose a tax which may adversely affect the financial interests of either or any of the parties . . . ." (11 Cal.2d at p. 294.) A recent statement of this rule appears in *Coast Bank* v. *Holmes,* 19 Cal.App.3d 581, at page 596 [97 Cal.Rptr. 30]. The general principle announced in the cases is that both existing law and " 'the reservation of the essential attributes of continuing governmental power' " are " 'read into' " all contracts " 'as a postulate of the legal order.' "

Western maintains that no such reservation may be "read into" a public contract. It relies in this connection upon two decisions of the United States Supreme Court and one from the First Circuit dealing with public contracts, and a line of California cases concerned with the pension rights of public employees.

*Murray* v. *City of Charleston* (1877) 96 U.S. 432 [24 L.Ed. 760], held unconstitutional an ordinance whereby, after issuance of interest-bearing municipal obligations, the city levied a general personal property tax which applied to them and empowered itself to deduct the tax from the interest payments. The opinion of the court, however, makes it clear that it was the provision for automatic collection from the particular class of taxpayer (creditors of the city) that invalidated the law. The provision for deduction of the tax from the interest payment was described as "A change of the express stipulations of a contract, or a relief of a debtor from strict and literal compliance with its requirements" (96 U.S. at p. 444 [24 L.Ed. at p. 762]) and the court made it clear that the interest once paid could have been taxed if it constituted property having a situs within the city.[5]

A more modern Supreme Court decision relied upon by Western is *El Paso* v. *Simmons* (1965) 379 U.S. 497 [13 L.Ed.2d 446, 85 S.Ct. 577]. This case also involved legislation diminishing the rights of a party to a public contract, but in this case the legislation was upheld: the time within which a defaulting purchaser under a contract to buy public land could reinstate his contract, which had been unlimited, was cut to five years. Western's contention that the sole basis for upholding this impairment was that it constituted "nothing but a modification of the remedy" is incorrect. The court expressly stated that it did not base its decision on that ground

---

[5]The holder of the municipal obligation in this case was a resident of Germany, and the court obviously did not think that there was any taxable asset in Charleston.

but rather upon the proposition that "it is not every modification of a contractual promise that impairs the obligation of contract under federal law, any more than it is every alteration of existing remedies that violates the Contract Clause." (379 U.S. at pp. 506-507 [13 L.Ed.2d at pp. 453-454].) The principle found to govern the case was stated by the court as follows: ". . . The *Blaisdell* opinion [*Home Building & Loan Assn.* v. *Blaisdell,* 290 U.S. 398] which amounted to a comprehensive restatement of the principles underlying the application of the Contract Clause, makes it quite clear that '[n]ot only is the constitutional provision qualified by the measure of control which the State retains over remedial processes, but the State also continues to possess authority to safeguard the vital interests of its people. It does not matter that legislation appropriate to that end "has the result of modifying or abrogating contracts already in effect." *Stephenson* v. *Binford,* 287 U.S. 251, 276. Not only are existing laws read into contracts in order to fix obligations as between the parties, but the reservation of essential attributes of sovereign power is also read into contracts as a postulate of the legal order. . . . This principle of harmonizing the constitutional prohibition with the necessary residuum of state power has had progressive recognition in the decisions of this Court.' 290 U.S., at 434-435. Moreover, the 'economic interests of the State may justify the exercise of its continuing and dominant protective power notwithstanding interference with contracts.' *Id.,* at 437. The State has the 'sovereign right . . . to protect the . . . general welfare of the people . . . . Once we are in this domain of the reserve power of a State we must respect the "wide discretion on the part of the legislature in determining what is and what is not necessary." ' *East New York Savings Bank* v. *Hahn,* 326 U.S. 230, 232-233. As Mr. Justice Johnson said in *Ogden* v. *Saunders,* '[i]t is the motive, the policy, the object, that must characterize the legislative act, to affect it with the imputation of violating the obligation of contracts.' 12 Wheat. 213, 291.

"Of course, the power of a State to modify or affect the obligation of contract is not without limit. '[W]hatever is reserved of state power must be consistent with the fair intent of the constitutional limitation of that power. The reserved power cannot be construed so as to destroy the limitation, *nor is the limitation to be construed to destroy the reserved power in its essential aspects.* They must be construed in harmony with each other. This principle precludes a construction which would permit the State to adopt *as its policy* the repudiation of debts or the destruction of contracts or the denial of means to enforce them.' " (Italics added.) (379 U.S. at pp. 508-509 [13 L.Ed.2d at pp. 454-455].)

Under the holding of the court in *El Paso,* the application of the tax

increase to Western was clearly valid. There is absolutely nothing in the record to suggest that the motive of the Legislature was other than that of raising general revenue to meet public need. Contractors under public contracts were not singled out for less favorable treatment than that accorded other contracting parties. They were in fact given a dispensation along with all others who had fixed-price construction contracts. Giving, as we must, "respect to the 'wide discretion on the part of the Legislature in determining what is and what is not necessary' " this court can only conclude that the policy of this legislation was legitimate and it is therefore valid.

Under circumstances virtually identical to those presented by this appeal, the Court of Appeals in *John McShain, Inc.* v. *District of Columbia,* 205 F.2d 882 [92 App.D.C. 358], upheld the application of the District's sales and use tax to a contractor with an antecedent fixed-price construction contract with the District. In that case the court did not have the benefit of the subsequent opinion in *El Paso* v. *Simmons.* Its reasoning, however, fits exactly the criteria stated by the Supreme Court. In upholding the validity of the tax, the court said: ". . . Nor does the statute impair a contractual obligation. The imposition of a new tax, or an increase in the rate of an old one, is one of the usual hazards of business enterprise: seldom, if ever, does such an event impair the obligation of a pre-existing contract. See Wiseman v. Gillioz, 1936, 192 Ark. 950, 96 S.W.2d 459. The Contract Clause, of course, is a limitation on state rather than federal action. Nevertheless, a measure of protection against contract impairment by the federal government is given by the Fifth Amendment. Perry v. United States, 1935, 294 U.S. 330, 55 S.Ct. 432, 79 L.Ed. 912; Lynch v. United States, 1934, 292 U.S. 571, 54 S.Ct. 840, 78 L.Ed. 1434. But Congress was not here seeking to repudiate or render profitless petitioner's contracts with the United States and the District of Columbia. Rather, it sought additional tax revenues for the District, through a general statute affecting petitioner no more severely than others who made purchases and sales. Cf. O'Malley v. Woodrough, 1939, 307 U.S. 277, 59 S.Ct. 838, 83 L.Ed. 1289. There was no deprivation of petitioner's property without due process of law. . . ." (205 F.2d at pp. 883-884.)

It is unnecessary to discuss the public pension cases relied upon by Western. They involve legislation directly modifying the obligations of public contracts rather than incidental burdens created by general legislation.[6]

We hold that Western was not subjected to any unconstitutional im-

[6]The same is true of the opinion of the First Circuit in *People of Porto Rico* v. *Havemeyer,* 60 F.2d 10, also cited by appellant.

pairment of its contract with the department as a result of any additional burden falling upon it by virtue of the increased tax. Having thus disposed of Western's contentions in this respect on their merits, we do not find it necessary to deal with the board's argument asserting Western's lack of standing with respect to portions of the tax not directly paid by it.

The judgment in No. 927659 is modified by striking therefrom paragraph 10 declaring the release given by Western does not bar its claim for additional compensation under the contract and, as so modified, is affirmed. The judgment in No. 986775 is affirmed. Respondent State Board of Equalization only is to recover its costs on these appeals.

Allport, Acting P. J., and Cobey, J., concurred.