[No. B008747. Second Dist., Div. Four. Nov. 22, 1985.]

CANTEEN CORPORATION, Plaintiff and Respondent, v.
STATE BOARD OF EQUALIZATION, Defendant and Appellant.

**COUNSEL**

John K. Van de Kamp, Attorney General, Edmond B. Mamer, Richard E. Nielsen and Herbert A. Levin, Deputy Attorneys General, for Defendant and Appellant.

Gibson, Dunn & Crutcher, James M. Murphy, Gail E. Lees and John J. Waller, Jr., for Plaintiff and Respondent.

## OPINION

McCLOSKY, J.—The California State Board of Equalization (Board) appeals from a judgment against it in favor of respondent Canteen Corporation (Canteen) awarding the latter a tax refund of $354,000.11 after a court trial on stipulated facts.

### FACTS

During the period May 1, 1969, through December 31, 1975, Canteen was engaged in the business of dispensing food and beverages from vending machines it owned and operated. Some of its vending machines dispensed paper cups with hot or cold beverages selling from 15 cents or less, and for 10 cents or less during the period prior to January 1, 1970.

Canteen bought paper cups from independent paper goods companies and beverage ingredients from independent vendors selling such beverage ingredients in its machines. Customers would then buy the drinks by putting the purchase price of the beverage in the machines and making the selection, at which point the machine would dispense the beverage into the paper cup. The customers paid neither a separate charge nor a deposit on the paper cups, and of course, did not return the cups after their intended single use. Canteen's sole use of the cups was to hold the drinks dispensed by the machines.

Canteen paid the Board sales and use taxes measured by Canteen's cost of buying these cups and filed a timely refund claim with the Board, which claim the Board denied. Canteen then filed this suit.

### ISSUES

 Was Canteen subject to use tax (Rev. & Tax. Code, § 6201) measured by the cost to Canteen of the above paper cups?

Board contends that Canteen was subject to use tax measured by the cost to Canteen of the above cups on the ground that former Revenue and Taxation Code section 6359.4,[1] which was enacted subsequent to and is more

---

[1] All references are to the Revenue and Taxation Code unless otherwise noted.

specific than section 6364, subdivision (a), makes Canteen a taxable user, not a tax-exempt seller of the above cups.

Canteen contends that it was exempt from use tax measured by the cost of the above cups on the ground that the cups were "[n]onreturnable containers . . . sold without the contents to persons who place the contents in the container and sell the contents together with the container" within the meaning of section 6364, subdivision (a). It contends further that section 6359.4 does not restrict operation of section 6364, subdivision (a) and that the "sale" referred to in section 6364 need not be a taxable sale. ■ Lastly, it contends that California sales & use tax regulation 1574 is void because it is inconsistent with the code.

### DISCUSSION

■ Where the issues involved in a tax refund action involve the application of a taxing statute to stipulated facts, an appellate court is confronted solely with a question of law. (*Consolidated Accessories Corp.* v. *Franchise Tax Board* (1984) 161 Cal.App.3d 1036, 1039 [208 Cal.Rptr. 74]; *Southern Pacific Equip. Co.* v. *State Bd. of Equalization* (1971) 16 Cal.App.3d 302, 304, fn. 1 [94 Cal.Rptr. 107].)

### I

■ Section 6364[2] provides an exemption from sales and use tax for purchases of "nonreturnable containers when sold without the contents to persons who place the contents in the container and sell the contents together with the container." As the Board concedes, the paper cups in question (a) were nonreturnable containers, and (b) were sold without the contents to a person (Canteen) who placed the contents in the container. However, Board denies that Canteen "sold" the contents together with the container.

Appellant Board contends, however, that "Canteen did not 'sell the contents together with the container' in that Canteen was the consumer, not the seller, of the contents and the container. (. . . § 6359.4)"[3]

---

[2]Section 6364 provides in pertinent part: "There are exempted from the taxes imposed by this part, the gross receipts from sales of and the storage, use, or other consumption in this State of: (a) Nonreturnable containers when sold without the contents to persons who place the contents in the container and sell the contents together with the container."

[3]At all times pertinent section 6359.4 provided: "Any vending machine operator is a consumer of, and shall not be considered a retailer of, tangible personal property which sells at retail for fifteen cents ($0.15) or less [ten cents ($0.10) or less prior to January 1, 1970] and which is actually sold through a vending machine."

The Board's ground for this contention is that "there are only two types of sales known to the Sales and Use Tax Law: (1) retail sales and (2) sales for resale. (. . . § 6007.)"

We, as did the trial judge, disagree with the Board's contention that Canteen did not "sell the contents together with the container," since that contention is contrary to the express statutory language at issue. A "sale" is defined in section 6006, subdivision (a), as among other things, "any transfer of title or possession, . . . of tangible personal property for a consideration." The exemption language in section 6364, subdivision (a) does not require that title and possession of the container pass with the contents in a "retail sale," in a "sale at retail," or in a "sale by a retailer." Rather, title and possession need only pass in a "sale" to qualify the purchase for section 6364's exemption.

A "retail sale" is defined separately in section 6007 as one of the kinds of transactions deemed "sales" for sales and use tax purposes. That section provides that "[a] 'retail sale' or 'sale at retail' means a sale for any purpose other than resale in the regular course of business in the form of tangible personal property." The Legislature thus recognized a difference between the terms "sales" and "retail sales" for purposes of the sales and use tax provisions.

It also recognized a difference between the designations "seller" and "retailer." "Sellers" are defined in section 6014 as persons engaged in the business of selling tangible personal property subject to the imposition of the sales and use tax. "Retailers," on the other hand, are defined in section 6015 as a subset of the class of defined "sellers." "Retailers" are "sellers" who make any retail sale or sales of tangible personal property.

When it enacted section 6359.4, the Legislature was cognizant of these distinctions in the applicable statutory language. Section 6359.4 was enacted to provide sales and use tax relief for vending machine operators by precluding a vending machine operator from being subject to the higher taxation that would result from its being deemed a retailer as that term is defined in section 6015. Nothing in the language of section 6359.4 precludes a vending machine operator from being a "seller" as that term is defined in section 6014. As we have seen, section 6364, subdivision (a) requires a subsequent sale, and not a "retail sale" of the nonreturnable container together with its contents.

The Legislature recognized that vending machine operators, while unable to make "retail sales" for these purposes, were nevertheless able to make "sales" of the products dispensed by the vending machines. Canteen un-

 ▬

doubtedly "sold" i.e., transferred title and possession of the paper cups in exchange for a consideration—even though Canteen was not a "retailer" of the products dispensed and thus remains within the exemption for "sales" of nonreturnable containers provided by section 6364.

Nevertheless Board contends that Canteen did not sell the cups "within the meaning of the sales and use tax law," urging that there are only two types of sales known to the sales and use tax law, i.e., (a) retail sales and (b) sales for resale under section 6007, and that Canteen did not make either type of sale.

Section 6359.4 is applicable only if tangible personal property is actually "sold" through a vending machine. It can not be successfully argued that if property is "sold" there has not been a sale within the meaning of the sales and use tax law, and in particular within the meaning of section 6359.4.

We must interpret these statutes together. We may not interpret the word "sold" used in section 6002 differently when reading or interpreting sections 6359.4 and 6364, subdivision (a).

As the Board admits, section 6006, subdivision (a) and 6007 were superseded by section 6359.4 and are thus inapplicable to the resolution of this appeal.

We hold that section 6359.4 was not intended to abolish the exemption from sales and use tax provided in section 6364, subdivision (a) for the purchase and sale of nonreturnable containers later sold with their contents through vending machines. We do not mean to diminish the full effect of section 6359.4, and we thus leave in effect the sales and use tax on the wholesale costs to the vending machine operator of certain other merchandise sold through vending machines (for an analogous treatment see *Lockheed Aircraft Corp.* v. *State Bd. of Equalization* (1978) 81 Cal.App.3d 257 [146 Cal.Rptr. 283]).

## II

 Appellant also contends that Canteen, pursuant to the provisions of California sales and use tax regulation 1574, was subject to use tax measured by the cost to Canteen of the aforementioned paper cups.

During all relevant periods, California sales and use tax regulation 1574(b)(2)(B) (Cal. Admin. Code, tit. 18, § 1574, subd. (b)(2)(B)) provided as follows: "Tax is measured by the sale price to the operator of property

dispensed through vending machines for 15 cents or less [10 cents or less prior to January 1, 1970], unless such sale is otherwise exempt. *For example, the measure of tax includes amounts paid by the operator for candy, soft drinks, and nonreturnable containers.* However, the property sold to the operator is an exempt food product, no tax is payable regardless of the nature of the product when dispensed through the vending machines, and regardless of whether facilities for consumption are furnished at locations of the vending machines."[4] (Italics added.)

██ ██ Of course, as appellant points out, a *valid* administrative regulation has the force and effect of law (*Maryland Casualty Co.* v. *United States* (1920) 251 U.S. 342, 349 [64 L.Ed. 297, 302, 40 S.Ct. 155]; *Agricultural Labor Relations Bd.* v. *Superior Court* (1976) 16 Cal.3d 392, 401 [128 Cal.Rptr. 183, 546 P.2d 687]), and there is a presumption of correctness and regularity of a valid administrative regulation which places the burden of demonstrating its invalidity upon the one challenging it. (*Mission Pak Co.* v. *State Bd. of Equalization* (1972) 23 Cal.App.3d 120, 125 [100 Cal.Rptr. 69].) ██ The applicable standard of judicial review of an administrative regulation is whether the regulation is arbitrary or capricious or has no reasonable or rational basis. (*Culligan Water Conditioning* v. *State Bd. of Equalization* (1976) 17 Cal.3d 86, 93, fn. 4 [130 Cal.Rptr. 321, 550 P.2d 593].) ██ ██ ██ ██ It is also true, as appellant contends, that tax exemptions are to be strictly construed against the taxpayer (*Santa Fe Transp.* v. *State Bd. of Equal.* (1959) 51 Cal.2d 531, 539 [334 P.2d 907]; *Western Contracting Corp.* v. *State Bd. of Equalization* (1974) 39 Cal.App.3d 341, 349 [114 Cal.Rptr. 227]); that when two laws upon the same subject, passed at different times, are inconsistent with each other, the one last passed must prevail (*Western Mobilehome Assn.* v. *County of San Diego* (1971) 16 Cal.App.3d 941, 948 [94 Cal.Rptr. 504]); that when a special statute and a general statute are in conflict, the special statute controls (*Agricultural Labor Relations Bd.* v. *Superior Court, supra,* 16 Cal.3d 392, 420); that a regulation validly adopted pursuant to a delegation of authority under a special statute prevails over the terms of a general statute; that where a subsequently enacted specific statute directly conflicts with an earlier, more general statute, the subsequent legislation effects a limited repeal of the former statute to the extent that the two are irreconcilable. (*Governing Board* v. *Mann* (1977) 18 Cal.3d 819, 828 [135 Cal.Rptr. 526, 558 P.2d 1].)

██ From this set of principles of statutory construction and by citing *Agricultural Labor Relations Bd.* v. *Superior Court, supra,* 16 Cal.3d 392,

---

[4]Effective October 26, 1975, the above quoted paragraph was changed from "(b)(2)(B)" to "(b)(2)" and "candy, soft drinks," was changed to "carbonated beverages."

420, appellant concludes that regulation 1574, in following the later and more specific statute (§ 6359.4) over the earlier and more general statute (§ 6364), "was not arbitrary, capricious, or without a reasonable or rational basis" and that Canteen, pursuant to said regulation 1574, was therefore subject to use tax on the aforesaid paper cups measured by their cost to it.

Appellant's reliance on the amalgam of these general principles of statutory construction and *Agricultural Labor Relations Bd.* v. *Superior Court, supra,* 16 Cal.3d 392, is misplaced. It is true that the court in that case, at page 420, reiterated the rule that "when a special and general statute are in conflict, the former controls. (Code Civ. Proc., § 1859.)" That court then went on to say: " ' ' '[T]he special act will be considered as an exception to the general statute whether it was passed before or after such general enactment.' ' (*In re Williamson* (1954) 43 Cal.2d 651, 654 [276 P.2d 593]; accord, *People* v. *Gilbert* (1969) 1 Cal.3d 475, 479-480 [82 Cal.Rptr. 724, 462 P.2d 580], and cases cited.) This rule of construction is reiterated and specifically made applicable to the ALRA [Agricultural Labor Relations Act] in section 1166.3, subdivision (b), of the act, which states: 'If any other act of the Legislature shall conflict with the provisions of this part [i.e., the ALRA], this part shall prevail.' "

 "If the Legislature can thus depart from its existing dispositions on a given topic, it can authorize an administrative agency to do so on its behalf. Accordingly, in cases of conflict a regulation validly adopted pursuant to a delegation of authority under a special statute likewise prevails over the terms of a general statute. The Legislature can surely accomplish indirectly that which it could do directly." (*Agricultural Labor Relations Bd.* v. *Superior Court, supra,* 16 Cal.3d at p. 420.)

That court then went on to approve the access rule there involved as such a regulation. But, appellant has overlooked the language of the Supreme Court in that case (at pp. 419 and 420): "It is settled that 'Administrative regulations that violate acts of the Legislature are void and no protestations that they are merely an exercise of administrative discretion can sanctify them. They must conform to the legislative will if we are to preserve an orderly system of government.' (*Morris* v. *Williams* (1967) *supra,* 67 Cal.2d 733, 737 [63 Cal.Rptr. 689, 433 P.2d 697].) Nor is the motivation of the agency relevant: 'It is fundamental that an administrative agency may not usurp the legislative function, no matter how altruistic its motives are.' (*City of San Joaquin* v. *State Bd. of Equalization* (1970) 9 Cal.App.3d 365, 374 [88 Cal.Rptr. 12].)

"The doctrine has been most frequently invoked to strike down administrative regulations in conflict with the statute which created the agency or

which the agency is authorized to administer. (See, e.g., *California Welfare Rights Organization* v. *Brian* (1974) 11 Cal.3d 237, 242-243 [113 Cal.Rptr. 154, 520 P.2d 970]; *Mooney* v. *Pickett* (1971) 4 Cal.3d 669, 680-681 [94 Cal.Rptr. 279, 483 P.2d 1231]; *California Sch. Employees Assn.* v. *Personnel Commission* (1970) 3 Cal.3d 139, 143-144 [89 Cal.Rptr. 620, 474 P.2d 436].) But the principle is equally applicable when the regulation contravenes a provision of a different statute. (See, e.g., *Orloff* v. *Los Angeles Turf Club* (1951) 36 Cal.2d 734 [227 P.2d 449]; *Tolman* v. *Underhill* (1952) 39 Cal.2d 708 [249 P.2d 280]; *Harris* v. *Alcoholic Bev. etc. Appeals Bd.* (1964) 228 Cal.App.2d 1 [39 Cal.Rptr. 192].)"

**(12a)** In striking down a State Board of Equalization regulation that the Supreme Court found had abridged "the taxpayer's statutory right to a tax exemption," the court in *Ontario Community Foundations, Inc.* v. *State Bd. of Equalization* (1984) 35 Cal.3d 811 [201 Cal.Rptr. 165, 678 P.2d 378], quoted with approval the following language from *Woods* v. *Superior Court* (1981) 28 Cal.3d 668, 679 [170 Cal.Rptr. 484, 620 P.2d 1032]: " 'Where a statute empowers an administrative agency to adopt regulations, such regulations "must be consistent, not in conflict with the statute, and reasonably necessary to effectuate its purpose." [Citations.] The task of the reviewing court in such a case " 'is to decide whether the [agency] reasonably interpreted the legislative mandate.' [Citation.]" [Citation.] Such a limited scope of review constitutes no judicial interference with the administrative discretion in that aspect of the rulemaking function which requires a high degree of technical skill and expertise. [Citation.] **(11b)** Correspondingly, *there is no agency discretion to promulgate a regulation which is inconsistent with the governing statute.* [¶] We repeat our admonition expressed in *Morris* v. *Williams* (1967) 67 Cal.2d 733, 737 . . .: "Our function is to inquire into the legality of the regulations, not their wisdom . . . . Administrative regulations that violate acts of the Legislature are void and no protestations that they are merely an exercise of administrative discretion can sanctify them." ■■■■ Acknowledging that the interpretation of a statute by one charged with its administration was entitled to great weight, we nonetheless affirmed: " 'Whatever the force of administrative construction . . . final responsibility for the interpretation of the law rests with the courts.' [Citations.] *Administrative regulations that alter or amend the statute or enlarge or impair its scope are void and courts not only may, but it is their obligation to [,] strike down such regulations." (Id.,* at p. 748.)' (Citation; italics added.)" *(Ontario Community Foundations, Inc.* v. *State Bd. of Equalization, supra,* 35 Cal.3d at pp. 816-817.)

■■■■ That part of regulation 1574 applicable to this case (i.e. 1574 (b)(2)) is in conflict with the statutory provision providing the exemption and its validity is not saved by the merely inclusive, and not exclusive

language of section 6015. Since nothing in the language of the later enacted section 6359.4 is irreconcilable with the language of section 6364 nothing requires that later enacted section to control over the former section 6359.4. As the trial judge pointed out, the two sections can "be reconciled without violence to either. Section 6359.4 is a broad exemption which eliminates the sales or use taxation of vending machine transactions under fifteen cents each. Section 6364, the earlier statute, is a more narrow exemption that relates to certain specified containers. Plaintiff's containers meet the requirements of Section 6364. Nothing expressly set forth in Section 6359.4 eliminates that exemption, and the implication thereof urged by defendant is [neither] logical nor compelled."

*Culligan Water Conditioning* v. *State Bd. of Equalization, supra,* 17 Cal.3d 86; *Mission Pak Co.* v. *State Bd. of Equalization, supra,* 23 Cal.App.3d 120, and *Henry's Restaurants of Pomona, Inc.* v. *State Bd. of Equalization* (1973) 30 Cal.App.3d 1009 [106 Cal.Rptr. 867], cited by appellant are distinguishable from the case before us.

Both *Mission Pak* and *Henry's* involved merely the application of law to the facts where deference to the Board's decisions was appropriate in establishing and enforcing rules and regulations categorizing and classifying items of food products, from the myriad of those available into taxable and nontaxable categories.

*Culligan* involved the Board's application of the relevant law to the facts. That court pointed out that the final interpretation of a statute or a regulation rested with the courts and not with the Board (17 Cal.3d at p. 93) but adopted a constrained judicial review in that case under the "arbitrary and capricious" or "without rational basis" standard since in that case the classification of receipts merely involved the application of the law to the facts and the basis of the Board's assessment was not embodied in any formal regulation or even an interpretive ruling covering the water conditioning industry as a whole, but was nothing more than the Board's auditor's interpretation of existing regulations.

The judgment is affirmed.

Woods, P. J., and Arguelles, J., concurred.

Appellant's petition for review by the Supreme Court was denied February 26, 1986.