Filed 5/3/23; Opinion following rehearing

**CERTIFIED FOR PARTIAL PUBLICATION**[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| KACIE LYNN YOUNG,<br><br>    Plaintiff and Appellant,<br><br>        v.<br><br>MIDLAND FUNDING LLC et al.,<br><br>    Defendants and Respondents. | A161843, A162784<br><br>(San Mateo County Super. Ct.<br>No. 19-CIV-07622) |

Kacie Lynn Young filed a complaint alleging that Midland Funding, LLC (Midland Funding) and Midland Credit Management, Inc. (MCM) (collectively the Midland parties) improperly pursued a debt collection lawsuit and obtained a default judgment against her for a delinquent credit account of $8,529.93. Included in her complaint were equitable causes of action for vacatur of the default judgment and a cause of action for damages under the Rosenthal Fair Debt Collection Practices Act (Rosenthal Act) (Civ. Code,[1] § 1788 et seq.). Factually, the gist of all of her claims was that the Midland parties falsely and deceptively represented in the debt collection lawsuit that they effected substituted service of process on her, and then relied on this false representation to obtain the default judgment and attempt to collect on it. Legally, the focus of Young's Rosenthal Act cause of action

---

[*] Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication with the exception of parts II.A., II.B.2., and II.C. of the Discussion.

[1] Further undesignated statutory references are to the Civil Code.

1

was an alleged violation of section 1788.17, but she included a scattershot series of allegations—described by the Midland parties as her "derivative claims"—citing various other provisions of the Rosenthal Act as well as various provisions of the Fair Debt Collection Practices Act (15 U.S.C. § 1692 et seq.) (FDCPA).

Midland Funding and MCM each responded with a motion to strike all of Young's causes of action under Code of Civil Procedure section 425.16, commonly known as the anti-SLAPP statute. Through these motions, the Midland parties sought to strike all of Young's causes of action before discovery could be had, arguing variously that Young's equitable causes of action were moot; that MCM has no liability because it did not take any action against her in the previous lawsuit; that Young cannot prevail on her Rosenthal Act cause of action because substituted service was effected; that even if it turns out substituted service was not effected, neither of the Midland parties had any knowledge of the service defect, thereby defeating the Rosenthal Act cause of action because knowledge is a required element under section 1788.15, subdivision (a); and, finally, that Young's Rosenthal Act cause of action was time-barred. In the alternative, Midland Funding briefly noted its right to challenge specific allegations within the Rosenthal Act cause of action, without directly making a request for that narrower form of relief in its notice of motion or in the motion itself. MCM incorporated this oblique contention by reference in its motion papers.

The trial court granted the Midland parties' anti-SLAPP motions on the ground Young did not show she would probably prevail on the merits of her claims, entered judgment in their favor and awarded them attorney fees and costs in an amount to be later determined. Because the court granted the Midland parties' motions in their entirety, it had no occasion to address

2

Midland Funding's alternative and indirect request to strike discrete allegations within Young's Rosenthal Act cause of action. Young appeals from the judgment and from the trial court's later order staying a motion by the Midland parties for $78,635.14 in attorney fees and costs pending the outcome of our review. We have consolidated these two appeals.

In the published portion of this opinion, we conclude Young showed she would probably prevail on the merits of her Rosenthal Act cause of action. Contrary to the Midland parties' contentions, she produced prima facie evidence that they falsely represented substituted service on her was effected in the debt collection lawsuit. Further, she was not required under section 1788.17 of the Rosenthal Act to show that the Midland parties knowingly made this false representation, and that provision controls over section 1788.15, subdivision (a) to the extent the two are inconsistent. Finally, we reject the Midland parties' request, stated as a vague alternative argument in their responding brief without citation to *Baral v. Schnitt* (2016) 1 Cal.5th 376, 384 (*Baral*), that we order Young's "derivative claims" to be stricken pursuant to the request for that relief in Midland Funding's anti-SLAPP motion. We conclude the Midland parties either failed to bear their initial burden for this request under *Baral* or forfeited the argument by not raising it with sufficient specificity in their responding brief.

In the unpublished portions of the opinion, we conclude Young's equitable causes of action are moot and her Rosenthal Act cause of action was not time-barred. In line with our determination that Young made a showing of minimal merit on her Rosenthal Act cause of action, we also conclude the order staying decision on the Midland parties' fee motion must be vacated, and, as a result, we need not address the various attorney fees issues the parties have briefed in connection with that stay order.

## I. BACKGROUND

Young contended below her employer told her in November 2019 that it had received an earnings withholding order to garnish her wages (wage garnishment order). Upon learning this, Young claimed, she investigated and only then discovered the existence of a 2010 default judgment against her and in favor of Midland Funding for a purported account debt of $8,529.93 plus interest (2010 default judgment). Young further contended that she had never been served with process in the underlying lawsuit Midland Funding brought against her and had no knowledge of the lawsuit or the judgment before 2019.

In December 2019, Young, through her attorney, asked Midland Funding to stipulate to vacatur of the 2010 default judgment because she had never been served with process. Later that month, having received no response within the time she requested for a response, Young sued Midland Funding and MCM in San Mateo County Superior Court.

Young brought three equitable causes of action to set aside the 2010 default judgment and have it declared void based on extrinsic mistake or extrinsic fraud. She also brought a cause of action for actual and statutory damages, penalties, and reasonable attorney fees and costs under the Rosenthal Act. In support of alleged violations of several provisions of the Rosenthal Act, Young averred that the Midland parties were debt collectors of a consumer debt they claimed she owed, and that they engaged in various forms of false and deceptive conduct in attempting to collect that debt. Her allegations centered on her contention that she was never served with process in the lawsuit Midland Funding brought against her.

In their joint answer, Midland Funding and MCM denied Young's allegations and asserted numerous affirmative defenses. Soon after, each filed an anti-SLAPP motion to strike all of Young's causes of action brought

4

against it.  Their motions were based on overlapping but not identical grounds.  Each also sought attorney fees and costs under the anti-SLAPP statute.[2]

In their anti-SLAPP motions, the Midland parties contended, among other things, that Young's Rosenthal Act cause of action was time-barred; that there was no evidence that MCM had any role in bringing or pursuing the lawsuit against Young; and that Young failed to show that she or the Midland parties came within the respective definitions of a "debtor" of "consumer" debt or of a "debt collector."

To meet the requisite two-step test under the anti-SLAPP statute, the Midland parties contended, first, that Young's lawsuit was directed at constitutionally protected public activity, i.e., activities before a judicial proceeding.  Second, they argued, Young could not meet her burden of showing she would probably prevail on the merits of any of her causes of action because Midland Funding *had* effected substituted service of process on her in its lawsuit against her and, even if service had not been legally effected, they never knew service had not been effected.

At the second step of the analysis, the Midland parties relied on proof of substituted service of process documents Midland Funding filed with the superior court in 2009.  These documents indicate that in January 2009, a registered process server, after making reasonably diligent but unsuccessful efforts to personally serve Young at a particular address in Burlingame, California (Burlingame address), served the summons and complaint at that address on a man, described as "John Doe, A white male approx. 30–35 years

---

[2] Code of Civil Procedure section 425.16, subdivision (c)(1) states in relevant part, "[A] prevailing defendant on a special motion to strike shall be entitled to recover that defendant's attorney's fees and costs."

of age 5'6"–5'8" in height weighing 140–160 lbs with black hair," who was "a competent member of the household . . . at the dwelling house or usual place of abode of [Young]." The documents also indicate the process server later mailed the summons and complaint to the Burlingame address.

The Midland parties further contended that Midland Funding purchased Young's account from a third party lender's managing company in 2008, and that the account had an outstanding balance of $8,269.93. As part of this transaction, MCM received records from the managing company, including a loan repayment and security agreement that Young executed in 2005 (2005 loan agreement), which listed her address as the Burlingame address. Drawing from electronic records obtained from the managing company, MCM created a "seller data sheet" for Young's account. This data sheet listed the Burlingame address as Young's address. According to a declaration of an MCM senior project manager that the Midland parties filed in support of their anti-SLAPP motions and which we will discuss further *post*, "Midland relied on information for [Young] as reflected in the documents and information provided by [the lender's managing company], including the Loan Agreement and the Seller Data Sheet."

Young filed an opposition to the Midland parties' anti-SLAPP motions. She did not contest that the Midland parties had satisfied their burden under the first step of the anti-SLAPP test. Tracking the approach taken by the Midland parties, she focused her arguments on whether she showed she had a probability of prevailing on the merits of her causes of action. In a declaration, Young asserted she knew nothing of Midland Funding's lawsuit against her until 2019, had not resided at the Burlingame address since 2001, and had never received the summons and complaint that were allegedly served or delivered there. According to Young's mother, stepfather

6

and brother, who also filed declarations, while they resided at the Burlingame address in 2009, Young did not live there and no documents relating to the lawsuit had been served or received at the residence.

Young argued the Midland parties had violated section 1788.17 by falsely representing that this substituted service had been effected. Because of this lack of service, she argued, the 2010 default judgment was void *ab initio*, not merely voidable, and the Midland parties had violated the Rosenthal Act by continuing to attempt to collect on that judgment despite actual knowledge that the judgment was void for lack of jurisdiction, an apparent reference to the notice her attorney gave to Midland Funding's counsel in December 2019 of Young's contention that substituted service on her had never been effected.

In July 2020, during the pendency of the action below, Midland Funding did not apply to renew the 10-year time period provided by statute for it to enforce the 2010 default judgment. As a result, its right to enforce that judgment expired.

After much debate and consideration, including the parties' submission of written answers to the trial court's questions on a number of issues, the court issued a written order in which it granted the Midland parties' anti-SLAPP motions and ordered Young's complaint stricken on the ground Young had not established a probability of prevailing on the merits. The court ruled in relevant part, "The default judgment . . . is valid until it is declared void or overturned by a court, and thus, [Young] failed to meet her burden of stating and substantiating a legally sufficient claim. Additionally, the Court finds that there is no evidence that [the Midland parties] made any attempt to collect the debt after receiving the December, 2019 letter by [Young's] counsel." The court did not address whether Young's equitable

7

claims were moot.  It also awarded the Midland parties their "reasonable attorneys' fees and costs incurred in bringing each of their respective [anti-SLAPP motions], in an amount to be determined by the Court on a noticed motion."  Soon thereafter, the court entered judgment in favor of the Midland parties, from which Young filed a timely notice of appeal.

Subsequently, the Midland parties moved under the anti-SLAPP statute for an award of $78,635.14 in attorney fees and costs.  Young opposed the motion, arguing among other things that the Rosenthal Act attorney fee provision (§ 1788.30, subd. (c)), which requires a showing that the debtor did not act in good faith, governed whether the Midland parties should be awarded attorney fees, not the anti-SLAPP statute attorney fee provision (Code Civ. Proc., § 425.16, subd. (c)(1)), which does not require such a showing.  The trial court ordered the attorney fee motion stayed pending the outcome of Young's appeal from the judgment without addressing any of the issues raised by the parties.  Young filed a timely notice of appeal from this order, and we consolidated the two appeals.

We filed an opinion on October 7, 2022, (1) reversing as moot the trial court's order striking Young's equitable claims, (2) reversing the trial court's order striking Young's Rosenthal cause of action, (3) rejecting the Midland parties' argument that Young's Rosenthal cause of action is time-barred, and (4) declining to address (a) the Midland parties' alternative argument that we order Young's "derivative claims" stricken and (b) Young's attack on the trial court's order staying the Midland parties' fee motion.  We subsequently granted rehearing to address the Midland parties' contention that, under *Baral*, they were entitled to a ruling on their alternative request that we order Young's "derivative claims" stricken.  We now file this revised opinion adhering in all respects to our prior opinion, but providing further

8

explanation for our determination that we need not address the Midland parties' alternatively stated request for relief under *Baral*.

## II. DISCUSSION

The parties devote most of their attention to whether the 2010 default judgment was, as Young asserts, void *ab initio* or, as the Midland parties assert, merely voidable upon an order of the court. Logically, that issue drives whether the Midland parties' settlement demands for payment and refusal to withdraw the wage garnishment order after being told by Young's attorney of the lack of service violated the Rosenthal Act. But we view the parties' arguments around voidness versus voidability as tangential. All that need be addressed to resolve the appeals before us are three issues: (1) whether Young's equitable claims are moot, (2) whether there is prima facie evidence indicating that Young will probably prevail on the merits of some part of her Rosenthal Act cause of action, and (3) whether that cause of action is time-barred. We turn now to these three issues. And we publish our analysis of the second of these issues, since its proper resolution on this record requires us to address statutory interpretation issues that have not yet been addressed in the California courts.

### A. *Young's Equitable Causes of Action Are Moot*

As they did below, Young and the Midland parties both assert that Young's equitable causes of action are moot because of the expiration of the 2010 default judgment in July 2020, when Midland Funding did not seek to renew its time to enforce the judgment. The Midland parties argue mootness is a separate and independent ground for us to reject Young's appeal regarding her equitable causes of action.

We agree that the equitable claims are moot. "A claim is moot when the grounds for the claim no longer exist." (*People v. Peoples* (2016) 62 Cal.4th 718, 773.) The general rule is that " ' "the duty of . . . every . . .

9

judicial tribunal[] is to decide actual controversies by a judgment which can be carried into effect, and not to give opinions on moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it." ' " (*Eye Dog Foundation v. State Board of Guide Dogs for the Blind* (1967) 67 Cal.2d 536, 541.) As this court has previously noted, " '[t]he critical factor in considering whether [an] . . . appeal is moot is whether the appellate court can provide any effective relief if it finds reversible error.' " (*In re David B.* (2017) 12 Cal.App.5th 633, 644, cited unfavorably on another ground in *In re D.P.* (2023) 14 Cal.5th 266, 283.) " 'When no effective relief can be granted, an appeal is moot and will be dismissed.' " (*MHC Operating Limited Partnership v. City of San Jose* (2003) 106 Cal.App.4th 204, 214; accord, *Eye Dog Foundation v. State Board of Guide Dogs for the Blind*, at p. 541.)

In July 2020, when Young's action was still pending below, Midland Funding allowed the 10-year time period it had to enforce the 2010 default judgment to expire under Code of Civil Procedure section 683.020[3] without applying for its renewal.[4] Subsequently, both Young and the Midland parties

---

[3] Code of Civil Procedure section 683.020 states: "Except as otherwise provided by statute, upon the expiration of 10 years after the date of entry of a money judgment or a judgment for possession or sale of property:

"(a) The judgment may not be enforced.

"(b) All enforcement procedures pursuant to the judgment or to a writ or order issued pursuant to the judgment shall cease.

"(c) Any lien created by an enforcement procedure pursuant to the judgment is extinguished."

[4] Midland Funding could have applied to renew the 2010 default judgment before its expiration under Code of Civil Procedure section 683.130, subdivision (a), which states in relevant part, "In the case of a lump-sum money judgment . . . , the application for renewal of the judgment may be filed at any time before the expiration of the 10-year period of enforceability provided by Section 683.020 . . . ."

10

took the position regarding the anti-SLAPP motions that Young's three equitable causes of action—for setting aside the default judgment based on extrinsic mistake, setting aside the judgment based on extrinsic fraud, and a declaration that the 2010 default judgment was void—were moot because of the expiration of the 2010 default judgment.

At the hearing on the anti-SLAPP motions, the court indicated it was amenable to dismissing the entire case as moot because of the expiration of the time period to enforce the 2010 default judgment. The court asked counsel for the Midland parties if she would "do a walk-away with a dismissal" without the court ruling on the anti-SLAPP motions. Counsel responded that she would not because, while the equitable causes of action were moot, the Rosenthal Act cause of action was not in light of Young's allegations that the Midland parties should be held liable for violations of the Act that they had already committed. As we have discussed, the trial court ruled in favor of the Midland parties on their anti-SLAPP motions on the ground that Young had not shown a probability of prevailing on the merits without addressing whether the equitable causes of action were moot.

Based on the record before us, we conclude that Young's equitable claims are moot—and were moot when the trial court ruled on the anti-SLAPP motions—because Midland Funding's time to enforce the 2010 default judgment expired under Code of Civil Procedure section 683.020 in July 2020. We agree with the parties that, in light of this expiration, we cannot " 'provide any effective relief if [we] find[] reversible error' " (*In re David B.*, *supra*, 12 Cal.App.5th at p. 644) because there is not an actual

11

controversy left to resolve.[5]  So we will reverse the trial court's ruling on the anti-SLAPP motions to the extent it deals with Young's equitable causes of action, and direct the trial court to dismiss those causes of action as moot on remand.  (Cf. *Paul v. Milk Depots, Inc.* (1964) 62 Cal.2d 129, 134 [proper disposition of appeal that became moot due to events that occurred during pendency of appeal was to reverse and remand with directions to dismiss for mootness, since simply dismissing the appeal would have implicitly affirmed the judgment].)[6]

## B. *The Court Erred in Striking Young's Rosenthal Act Cause of Action Regarding Midland Funding and MCM*

Young alleged in her Rosenthal Act cause of action and argued in her opposition to the anti-SLAPP motions that the Midland parties engaged in

---

[5] We note that the expiration of this 10-year enforcement time period does not in all instances necessarily moot separate creditor actions on judgments that are brought within the applicable statute of limitations.  (See, e.g., *Pratali v. Gates* (1992) 4 Cal.App.4th 632, 636–639 [action proper where statute of limitations was tolled while party was out of state regardless of the expiration of the enforcement period]; Code Civ. Proc., §§ 683.050, 337.5.)  Here, there is nothing in the record suggesting that a separate action on the 2010 default judgment could be timely brought.

[6] The parties have not addressed the proper disposition of this appeal with respect to the equitable causes of action following a determination of mootness, and we have found no authority directly on point.  But to avoid leaving the same misimpression the *Paul* court sought to avoid—that it was implicitly affirming the judgment there under review—we think the dispositional approach taken in that case is appropriate here.  In directing that the equitable causes of action be dismissed as moot, we intimate no view of the merits of those causes of action should the court find it necessary to revisit the various issues that may arise (see, e.g., *Stiles v. Wallis* (1983) 147 Cal.App.3d 1143, 1147 [" 'Extrinsic mistake is found when . . . a mistaken belief of one party prevented proper notice of the action . . . .' "]) in connection with a renewed motion by the Midland parties for attorney fees under Code of Civil Procedure section 425.16, subdivision (c)(1) on remand.

acts that violated several provisions of the Rosenthal Act. We focus on the parties' contentions regarding sections 1788.17 and 1788.15, subdivision (a), the two provisions of the Rosenthal Act that are most central to the opposing arguments on this issue.

1. **Young Showed She Would Probably Prevail on Her Rosenthal Act Claim That the Midland Parties Violated Civil Code Section 1788.17**

   a. *Legal Standards*

"The Rosenthal Act was enacted 'to prohibit debt collectors from engaging in unfair or deceptive acts or practices in the collection of consumer debts.' (§ 1788.1, subd. (b).) The Rosenthal Act is ' "a remedial statute [that] should be interpreted broadly in order to effectuate its purpose." ' [Citation.] It was enacted in 1977, the same year that its federal counterpart,[the FDCPA] . . . was enacted. [Citation.] In addition to its other requirements and prohibitions, the Rosenthal Act generally requires debt collectors to comply with the provisions of the FDCPA. (§ 1788.17.)" (*Davidson v. Seterus* (2018) 21 Cal.App.5th 283, 295, italics and fn. omitted.)

"A SLAPP suit—a strategic lawsuit against public participation—seeks to chill rights to free speech or petition by dragging the speaker or petitioner through the litigation process, without genuine expectation of success in the suit. The Legislature enacted [Code of Civil Procedure] section 425.16 to provide a summary disposition procedure for SLAPP claims. Toward this end, [Code of Civil Procedure] section 425.16 authorizes courts, upon motion by anyone who claims to be the target of a SLAPP suit, to probe the basis for any cause of action allegedly arising from protected communicative activities, and to strike it if the claimant cannot show minimal merit." (*Area 51 Productions, Inc. v. City of Alameda* (2018) 20 Cal.App.5th 581, 591–592 (*Area 51*).)

The heart of the anti-SLAPP statute is Code of Civil Procedure section 425.16, subdivision (b)(1), which provides: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." Code of Civil Procedure section 425.16, subdivision (b)(1) does not provide a form of immunity, "insulat[ing] defendants from *any* liability for claims arising from the protected rights of petition or speech." (*Baral, supra*, 1 Cal.5th at p. 384.) Rather, the statute "only provides a procedure for weeding out, at an early stage, *meritless* claims arising from protected activity." (*Ibid*.)

"Courts analyze anti-SLAPP motions using a familiar two-step analysis." (*Area 51, supra*, 20 Cal.App.5th at p. 592.) "First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. . . . If the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim." (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67.) " 'Only a cause of action that satisfies *both* prongs of the anti-SLAPP statute—i.e., that arises from protected speech or petitioning *and* lacks even minimal merit—is a SLAPP, subject to being stricken under the statute.' " (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 820 (*Oasis*).)

The second stage of the anti-SLAPP test has been described "as a 'summary-judgment-like procedure.' " (*Baral, supra*, 1 Cal.5th at p. 384.) A plaintiff, to show it will probably prevail on a claim, must "state[] and

14

substantiate[] a legally sufficient claim" (*Equilon Enterprises v. Consumer Cause, Inc.*, *supra*, 29 Cal.4th at p. 63) through "competent and admissible evidence." (*Tuchscher Development Enterprises, Inc. v. San Diego Unified Port Dist.* (2003) 106 Cal.App.4th 1219, 1236.) " 'Put another way, the plaintiff "must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." ' " (*Taus v. Loftus* (2007) 40 Cal.4th 683, 713–714 (*Taus*).)

At this second stage, "a plaintiff seeking to demonstrate the merit of the claim 'may not rely solely on its complaint, even if verified; instead, its proof must be made upon competent admissible evidence.' " (*Sweetwater Union High School Dist. v. Gilbane Building Co.* (2019) 6 Cal.5th 931, 940.)

We may consider inferences as well as direct evidence to determine whether there is prima facie evidence in support of a plaintiff's claim. "[T]he proper inquiry in the context of an anti-SLAPP motion 'is whether the plaintiff proffers sufficient evidence for such an inference.' " (*Oasis*, *supra*, 51 Cal.4th at p. 822; followed in *Jenni Rivera Enterprises, LLC v. Latin World Entertainment Holdings, Inc.* (2019) 36 Cal.App.5th 766, 781.) " '[C]laims with the requisite minimal merit may proceed.' " (*Baral*, *supra*, 1 Cal.5th at p. 385.) In conducting an assessment of the evidence proffered at this second stage of the analysis, the court, as it would in summary procedure, " 'does not *weigh* the credibility or comparative probative strength of competing evidence.' [Citation.] It 'accepts the plaintiff's evidence as true, and evaluates the defendant's showing only to determine if it defeats the plaintiff's claim as a matter of law' " (*Monster Energy Co. v. Schechter* (2019) 7 Cal.5th 781, 795), such as by "establishing a defense or the absence of a necessary element" of the plaintiff's cause of action. (*1-800 Contacts, Inc. v.*

*Steinberg* (2003) 107 Cal.App.4th 568, 585.) " '[W]e resolve conflicts and inferences in the record in favor of plaintiff.' " (*Monster Energy Co. v. Shechter*, at p. 795.)

On appeal, we examine without deference an order granting an anti-SLAPP motion to strike. (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 325.) In doing so, we conduct "an independent review of the entire record." (*Roche v. Hyde* (2020) 51 Cal.App.5th 757, 787.) We exercise our discretion to examine all of the evidence the parties presented to determine if prima facie evidence supports Young's contentions. (Code Civ. Proc., § 425.16, subd. (b)(2) ["In making its determination, the court shall consider the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based"]; see *Sweetwater Union High School Dist. v. Gilbane Building Co.*, *supra*, 6 Cal.5th at p. 949 ["at the second stages of an anti-SLAPP hearing, the court may consider affidavits, declarations, and their equivalents if it is reasonably possible the proffered evidence set out in those statements will be admissible at trial"].)

Our review will include facts of which the trial court properly took judicial notice. (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 291 [in determining whether anti-SLAPP plaintiff established a probability of prevailing, " 'the trial court considers the pleadings and evidentiary submissions of both the plaintiff and the defendant ([Code Civ. Proc.,] § 425.16, subd. (b)(2))' "]; *Newport Harbor Offices & Marina, LLC v. Morris Cerullo World Evangelism* (2018) 23 Cal.App.5th 28, 50 [court documents, including pleadings, and prior appellate opinion were "proper subjects of a request for judicial notice" below and considered by appellate court in determining anti-SLAPP plaintiff's probability of prevailing on claims]; *Golden Eagle Land Investment, L.P. v. Rancho Santa Fe Assn.* (2018)

19 Cal.App.5th 399, 411–412, 422–423 [appellate court considered materials judicially noticed below in determining anti-SLAPP plaintiff's probability of prevailing on claim].)

"If the trial court's decision is correct on any theory applicable to the case, we affirm the order regardless of the correctness of the grounds on which the lower court reached its conclusion." (*Robles v. Chalilpoyil* (2010) 181 Cal.App.4th 566, 573.) The reverse is true as well. If we conclude the plaintiff has cleared the modest hurdle of showing a stricken claim has "minimal merit" based on our independent review of the whole record—which includes reasonable inferences drawn from evidence, as well as facts of which the trial court properly took judicial notice—we will reverse and direct that the claim may proceed.

We need not spend time addressing the first prong of the anti-SLAPP test, since all parties agreed below and continue to agree on appeal that Young's Rosenthal Act cause of action arose from protected activity. We focus, then, on the second step of the anti-SLAPP test—the requirement that Young show her Rosenthal Act cause of action is legally sufficient and that she will probably prevail on it.

b. *There Is Prima Facie Evidence That Young Was a "Debtor" Who Allegedly Owed "Consumer Debt"*

The Midland parties argue as a separate and independent ground for rejecting Young's appeal that she did not proffer any evidence below to show she was a "debtor" under the Rosenthal Act or that any debt qualified as a "consumer credit transaction." Although Young did not proffer evidence on these specific issues, we conclude that the record regarding the anti-SLAPP motions contains prima facie evidence to support her contention that she met these statutory definitions.

17

Under the Rosenthal Act, a "debtor" "means a natural person from whom a debt collector seeks to collect a consumer debt that is due and owing *or alleged to be due and owing from such a person*." (§ 1788.2, subdivision (h), italics added.)  Consistent with this definition, Young stated in her complaint that she was "alleged to have incurred a financial obligation in the form of a consumer credit account . . . .  [Young] generally denies that any debt is owed."  As part of their anti-SLAPP motions, the Midland parties asked the trial court to take judicial notice of Midland Funding's 2009 complaint against Young.  In it, Midland Funding alleged that Young owed a debt to it based on an open book account.  Thus, Young qualified as a "debtor" under the Rosenthal Act.

Under the Rosenthal Act, "consumer debt" includes "money . . . due or owing or alleged to be due or owing from a natural person by reason of a consumer credit transaction." (§ 1788.2, subd. (f).)  "The term 'consumer credit transaction' means a transaction between a natural person and another person in which property, services, or money is acquired on credit by that natural person from the other person primarily for personal, family, or household purposes." (*Id.*, subd. (e).)  Consistent with these definitions, Young stated in her complaint, "The alleged debt was primarily for personal, family, or household purposes and is therefore a 'consumer debt' as that term is defined by . . . [section] 1788.2[, subdivision] (f)."

In support of their anti-SLAPP motions, the Midland parties submitted a document authenticated by MCM's senior project manager that establishes that Young's alleged debt meets these definitions.  Specifically, the 2005 loan agreement between Young and the predecessor lender (which lists the Burlingame address as Young's) states that she is being financed $6,483.25 and requires her to pay back $12,206 in principal and interest by April 2010.

The agreement includes a checked-off box that states, "You do intend to use the proceeds of this loan primarily for personal, family, or household purposes." Although Midland Funding did not sue directly on this agreement, it did sue on Young's account which, according to the MCM senior project manager's declaration, includes this agreement. Upon considering the reasonable inferences of this loan agreement, as we are to do at the second stage of an anti-SLAPP motion (*Oasis*, *supra*, 51 Cal.4th at p. 822; *Jenni Rivera Enterprises, LLC v. Latin World Entertainment Holdings, Inc.*, *supra*, 36 Cal.App.5th at p. 781), we conclude Young has established prima facie that she is a "debtor" and that her debt stems from a "consumer credit transaction" under the Rosenthal Act.

### c. *There Is Prima Facie Evidence That Midland and MCM Acted as Debt Collectors Regarding Young*

The Midland parties also argue we should reject Young's appeal because she did not proffer any evidence below that shows either of them met the definition of "debt collector" under the Rosenthal Act, and they further argue that in any event we should reject Young's appeal regarding MCM because she proffered no evidence that it "directly engaged in the acts that Young claims violated the Rosenthal Act." Here too, we conclude that, although Young did not proffer evidence on these specific issues, the record regarding the anti-SLAPP motions contains prima facie evidence to support her contentions that Midland Funding and MCM acted as "debt collectors" under the Rosenthal Act regarding her account.

The Rosenthal Act defines a "debt collector" as "any person who, in the ordinary course of business, regularly, on behalf of that person or others, engages in debt collection." (§ 1788.2, subd. (c).) Young alleged in her complaint that Midland Funding and MCM each was a "debt collector" under this definition.

19

The Midland parties submitted evidence in support of their anti-SLAPP motions from which it can be inferred that they both met this definition regarding Young's account. This prima facie evidence includes the declaration of the MCM senior project manager that the Midland parties submitted in support of their anti-SLAPP motions, in which she stated that she was the custodian of records responsible for maintaining MCM's documents relating to Young's account. In the course of authenticating certain documents, she also established that Midland Funding and MCM worked hand-in-hand regarding Young's account.

Specifically, the senior project manager stated, based on personal knowledge, that Midland Funding purchased Young's account from a managing company of a previous lender in 2008 (the year before filing suit against Young); that MCM, on behalf of Midland Funding, obtained various business records related to Young's account from that managing company, including the 2005 loan agreement; and that, as we have discussed, MCM created a seller data sheet for Young that Midland Funding relied on, and which lists her residential address as the Burlingame address.

Further, in paragraphs three through five of her declaration, the senior project manager stated, "3. At all times relevant, Midland [Funding] was a passive debt buyer that purchased portfolios of charged off credit card debt. [¶] 4. Midland [Funding] takes no action itself to collect the debt it owns. [¶] 5. Rather, Midland[ Funding]'s corporate affiliate, MCM, services the accounts, including by receiving and maintaining account documents for the individual accounts," including Young's account.

The MCM senior project manager also stated that Midland Funding, through its retained outside counsel, filed suit against Young in 2009 for $8,529.93, which Young owed on her account. She continued, "At all times

20

relevant, Midland [Funding] was represented by outside, independent legal counsel in connection with the Underlying Lawsuit and all judgment enforcement activity regarding [Young's] [a]ccount." This is confirmed by the record, which includes the complaint filed against Young in 2009 and the 2010 default judgment, as well as the 2019 wage garnishment order and Young's employer's return, all of which the Midland parties asked the trial court to take judicial notice of as part of their anti-SLAPP motions. Each of these documents contains an indication that it was prepared by attorneys for Midland Funding.

Here again, after considering reasonable inferences drawn from this record, as we must in evaluating the adequacy of an anti-SLAPP motion step-two showing, we conclude there is prima facie evidence Midland Funding was in the business of purchasing portfolios of charged-off credit card debt. Further, although "passive" in engaging in efforts to collect this debt, it nonetheless authorized its attorneys to file suit on its behalf against debtors such as Young and engage in efforts to collect such as the garnishment of a debtor's wages.[7] Thus, there is prima facie evidence that Midland Funding acted as a debt collector under the Rosenthal Act, i.e., as a "person who, in the ordinary course of business, regularly, on behalf of that person or others, engages in debt collection." (§ 1788.2, subd. (c).)

We reach this same conclusion regarding MCM based on its senior project manager's declaration. It establishes that Midland Funding took "no action itself to collect the debt it owns" but, "[r]ather, Midland[ Funding]'s corporate affiliate, MCM, services the accounts . . . ." *MCM* received the documents regarding Young's account from the managing company of the

---

[7] As we will discuss in part B.2., *post*, such garnishment efforts are against consumers, contrary to the Midland parties' contentions.

21

previous lender and *MCM* prepared a seller data sheet identifying Young's address.  Moreover, the senior project manager indicated, based on personal knowledge, that Midland Funding relied on this seller address sheet, which lists Young as residing at the Burlingame address—a fact she could only know if MCM worked with Midland Funding directly in pursuing collection of Young's purported debt.  From these statements, it can be reasonably inferred that MCM serviced Young's account for Midland Funding as part of its ordinary course of business and regularly engaged in debt collection, including by engaging in the filing of the 2009 lawsuit against Young, the service of process on her, the obtaining of the 2010 default judgment, and the effort to garnish her wages.  Young has therefore established prima facie it was a "debt collector" regarding her account.

     d. *There Is Prima Facie Evidence That the Midland Parties Violated Civil Code Section 1788.17*

While the parties devote some of their arguments here on appeal to the threshold "debtor," "consumer credit transaction," and "debt collector" issues, in the trial court the focal point of their anti-SLAPP step-two arguments was on the viability of two core factual contentions—(1) the Midland parties falsely and deceptively represented in Midland Funding's lawsuit against Young that substituted service of process on her was effected in 2009 when in fact she had never been served, and (2) the Midland parties subsequently and repeatedly relied on this misrepresentation in their efforts to obtain a default judgment and collect on that judgment, even after Young, through her attorney, advised counsel for Midland Funding in December 2019 that substituted service had never been legally effected.

The particulars are these.  According to Young, the Midland parties "obtained an Entry of Default and Judgment by default against Plaintiff by filing a Proof of Service of Summons that was known by Defendants to be

22

false and fraudulent. [Young] has notified [the Midland parties] of the falsity of their Proof of Service of Summons and the invalidity of the Judgment they obtained by default, but [the Midland parties] have refused and continue to refuse to stipulate to set aside the void judgment." (Fn. omitted.) Consistent with these allegations, Young further alleged that the Midland parties "made and used false, deceptive, and misleading representations in an attempt to collect the debt, in violation of . . . [section] 1788.17," and in an accompanying footnote she specifically cited sections 1692e and 1692e(10) of title 15 of the United States Code, which, as we will discuss, section 1788.17 incorporates. In opposing the anti-SLAPP motions, Young drew attention to these specific allegations, focusing in particular on the "false" proof of service of summons filed in the lawsuit against her and the Midland parties' continued demands for payment after her attorney gave them notice in December 2019 that substituted service on Young had never been legally effected.

Notably, however, other than her claim that the Midland parties continued to demand payment from her after being notified in December 2019 that substituted service on Young had never been effected, Young does not distinguish between representations the Midland parties knew to be false and representations that were "false" even if the Midland parties did not know it. This distinction matters because of two Rosenthal Act provisions upon which Young places great reliance, sections 1788.15, subdivision (a), and 1788.17. The Midland parties argue that Young did not make a prima facie showing that they violated the Rosenthal Act not only because substituted service on her was legally effected in 2009, but also because, even if it was not, Young failed to show they made any representation about service that they knew was false. They argue this lack of evidence is fatal to Young's Rosenthal Act cause of action because under section 1788.15,

23

subdivision (a), she was required to make a prima facie showing of such knowledge and, further, that section 1788.15, subdivision (a) controls over section 1788.17 to the extent the latter may authorize a Rosenthal Act claim based on an unknowingly false representation.

We conclude that Young made a prima facie showing that she was not served with process and that the Midland parties' representation that she was served was false. Although we agree with the Midland parties that Young did not make any showing they knew this representation was false, we conclude that (1) no such showing was required under section 1788.17— which, as we shall explain, recognizes claims for liability on a strict liability basis—and (2) section 1788.17 controls over section 1788.15, subdivision (a) to the extent the two provisions might conflict.

### i. *Young Made a Prima Facie Showing That Substituted Service on Her Was Not Legally Effected*

Young supported her core factual contention about the lack of service of process with declarations from herself, her mother, her stepfather and her brother. Young declared that she did not discover the 2010 default judgment or receive any of the lawsuit documents before 2019; did not reside at the Burlingame address after 2001; and resided at a different address, which she identified, in 2009. She further declared that the 2005 loan agreement listed the Burlingame address as hers incorrectly, perhaps because that agreement "shows that the overwhelming majority of the loan proceeds were kept by the creditor for refinancing of a prior loan account. As such, it is possible that the creditor used an old address without me noticing."

Young's mother, stepfather, and brother each declared that he or she had resided at the Burlingame address for decades, including in 2009. They each stated that after 2001, Young did not reside at the Burlingame address or receive any mail there and that no lawsuit documents intended for Young

24

had ever been served or delivered to the Burlingame address or to any of them.

Young relied on a declaration from her attorney to contend that the Midland parties knew as of December 2019 that she had never been served, but nonetheless continued thereafter with improper collection efforts. Young's attorney declared that he faxed a letter to the counsel of record for Midland Funding on December 19, 2019, in which he acknowledged that Midland Funding had filed proof of service of process documents with the superior court in 2009 showing that substituted service on Young had been effected. Nonetheless, he asserted in his letter based on a declaration by Young, "it appears credible that [Young] was not served with process in this case." He further asserted in his declaration that, despite his letter, the Midland parties "have, through counsel, made demands for payment (i.e., attempted to collect the alleged debt) . . . ."

We conclude that Young, via her declaration and those of her family members, made a prima facie showing that she was not served with process by substituted service. In evaluating the merits of a special anti-SLAPP motion to strike, we do not weigh the credibility or strength of an opposing party's evidence, but accept it as true, and resolve any conflicts and inferences in that party's favor. (*Monster Energy Co. v. Schechter*, *supra*, 7 Cal.5th at p. 795.) Under this standard, Young made a prima facie showing that the Burlingame address was *not* her "dwelling house [or] usual place of abode" via the declarations by her and her family, which indicate she resided elsewhere and did not receive mail at the Burlingame address when substituted service was attempted in 2009. Given these contentions, any attempt at substituted service at the Burlingame address would have been ineffective. (See Code Civ. Proc., § 415.20, subdivision (b) [providing for

25

substituted service to a competent member of a household or a person apparently in charge provided that service is effected "at the person's dwelling house, usual place of abode, . . . or usual mailing address"].)

The Midland parties point out that under Evidence Code section 647, "[t]he return of a process server . . . establishes a presumption, affecting the burden of producing evidence, of the facts stated in the return." They argue this presumption applies here despite Young's evidence because substituted service may be effected by leaving the documents with any adult "apparently in charge" under Code of Civil Procedure section 415.20, and Young does not present any evidence that substituted service on her was not effected via such a person.

This argument fails for two reasons. First, the process server attested that he served a person who was "a competent member of the household," *not* someone "apparently in charge." The Midland parties' contention that substituted service was effected via someone apparently in charge of the household at the Burlingame address therefore lacks any evidentiary support. Second, as we have just discussed, regardless of who was served, Young proffered competent evidence, in the form of declarations from her and members of her family, that this was *not* her dwelling place, usual place of abode, or usual mailing address, which was a requirement for any substituted service to be effective under Code of Civil Procedure section 415.20, subdivision (b). This evidence overcomes any presumption created by the return of substituted service of process documents. (See, e.g., *Farr v. County of Nevada* (2010) 187 Cal.App.4th 669, 680–681 ["if a presumption affecting the burden of producing evidence 'applies to a proposition, the proponent of the proposition need not prove it *unless the opposing party produces evidence undermining it, in which case the presumption is*

26

*disregarded* and the trier of fact must decide the question without regard to it' " (italics added)].) The Midland parties' arguments that Young failed to make a prima facie showing that substituted service was not legally effected on her are without merit.

### ii. *Young Did Not Make a Prima Facie Showing That the Midland Parties Knowingly Made a False Representation About Service*

Emphasizing the chronology of events in November and December 2019, the Midland parties pursue an alternative argument that spotlights another potential deficiency in Young's merits showing, and here they are correct: None of the evidence she submitted in her opposition to the anti-SLAPP motions shows or implies that the Midland parties ever *knew* she was not served, either before or after her attorney's December 12, 2019 letter to the attorney for Midland Funding. To the contrary, the 2009 proof of substituted service of process documents arguably gave the Midland parties good reason to think that Young *was* properly served with process.

Further, Young fails to explain why the Midland parties were required by law to rely on her and her attorney's December 2019 contentions in a letter to counsel for Midland Funding about the lack of service. We see no reason why the Midland parties were required to conclude these contentions were correct any more than a court or fact finder would be required to believe them. (See, e.g., *California Chamber of Commerce v. State Air Resources Bd.* (2017) 10 Cal.App.5th 604, 643, fn. 26 ["The fact a declaration appears in the record and was not directly contravened does not necessarily establish the truth of its contents. A trial court is free to disbelieve evidence whether or not contradicted, if there is a rational basis for doing so."]; see also *Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 890 ["As a general rule, '[provided] the trier of fact does not act arbitrarily, he may reject *in toto* the testimony of a witness, even though the witness is uncontradicted.' "].)

27

Accordingly, we conclude that Young failed to make a prima facie showing that the Midland parties *knew* at any time that Young was not served by substituted service and, therefore, failed to show that they made any knowing misrepresentations about service.

### iii. *Civil Code Section 1788.17 Incorporates the FDCPA's Strict Liability Standard*

Young's failure to make a prima facie case that the Midland parties deliberately ignored their obligation to serve her draws into sharp relief the parties' competing interpretations of sections 1788.15, subdivision (a) and 1788.17. Thus, we now turn to whether Young's prima facie showing that the Midland parties *unknowingly* made false representations Young had been served violated the Rosenthal Act. This requires us to address a question that, so far as we are aware, is a matter of first impression in the California courts.

Analytically, the issue arises as follows. Section 1788.15, subdivision (a) provides, "No debt collector shall collect or attempt to collect a consumer debt by means of judicial proceedings when the debt collector *knows* that service of process, where essential to jurisdiction over the debtor or his property, has not been legally effected." (Italics added.) Further, as our First District, Division One colleagues have held, under section 1788.15, subdivision (a), "[u]se of judicial proceedings to collect a debt without service of process [citation] will also be a continuing course of conduct insofar as the conduct involves multiple acts, such as obtaining and collecting on a judgment, that extend over a period of time before the proceedings are concluded." (*Komarova v. National Credit Acceptance, Inc.* (2009) 175 Cal.App.4th 324, 344 (*Komarova*).) In light of the repeated pattern of conduct violating multiple provisions of the Rosenthal Act, the *Komarova* court held, the plaintiff satisfactorily showed a violation of "section 1788.15,

28

subdivision (a), which prohibits an 'attempt to collect a consumer debt by means of judicial proceedings' when service of process has been *knowingly* neglected." (*Komarova*, at p. 345, italics added.)

To overcome the hurdle section 1788.15, subdivision (a) creates, Young relies on section 1788.17, which states in relevant part, "Notwithstanding any other provision of this title, every debt collector collecting or attempting to collect a consumer debt shall comply with the provisions of Sections 1692b to 1692j, inclusive, of, and shall be subject to the remedies in Section 1692k of, Title 15 of the United States Code." According to Young, "[t]he linchpin" of the Midland parties' efforts to wage a "shoddy" collection campaign against her is their "false representation that they had properly served YOUNG, and thus that the Court had jurisdiction over YOUNG to enter [the 2010 default judgment]. This false representation in an attempt to collect a debt is a clear violation of Civil Code [section] 1788.17, incorporating by reference 15 U.S.C. [sections] 1692e and 1692e(10). Each subsequent representation by [the Midland parties] in an attempt to collect the void Judgment necessarily incorporates this false representation, repeats it, and becomes another false representation in an attempt to collect a debt."

We agree with Young that section 1788.17 governs. Section 1692e of title 15 of the United States Code is a part of the FDCPA. (*Meza v. Portfolio Recovery Associates, LLC* (2019) 6 Cal.5th 844, 851.) In legal effect, what we have here is a federal liability standard embedded in state law. "The Rosenthal Act . . . incorporates the FDCPA, so that a violation of the FDCPA is per se a violation of the Rosenthal Act." (*Best v. Ocwen Loan Servicing, LLC* (2021) 64 Cal.App.5th 568, 576, citing § 1788.17.) Section 1692e provides in relevant part that a debt collector may not use any "*false . . . representation* or means in connection with the collection of any debt,"

29

including but not limited to regarding "the character, amount, or legal status of any debt" (15 U.S.C. § 1692e(2)(A), italics added), "[t]he threat to take any action that cannot legally be taken or that is not intended to be taken" (15 U.S.C. § 1692e(5)), and "*[t]he use of any false representation* or deceptive means to collect or attempt to collect any debt . . . concerning a consumer" (15 U.S.C. § 1692e(10), italics added). As Young points out, each of these FDCPA provisions is incorporated in section 1788.17.

To be sure, Young does not cite any California case, and we have not found one, that establishes whether section 1788.17, by incorporating title 15 United States Code section 1692e, prohibits a debt collector from *unknowingly* making or relying on a false representation about the legal status of a debt, a threat to take legal action that legally cannot be taken, or a false representation to collect or attempt to collect any debt of a consumer. Numerous non-California courts have held that a debt collector *is* liable under the FDCPA for unknowingly making false representations.[8] (See, e.g., *Clark v. Capital Credit & Collection Servs.* (9th Cir. 2006) 460 F.3d 1162, 1174–1176 [agreeing with the Second and Seventh Circuits that " '[title 15 United States Code] § 1692e applies even when a false representation was unintentional' "], citing *Gearing v. Check Brokerage Corp.* (7th Cir. 2000) 233 F.3d 469, 472, *Turner v. J.V.D.B. & Assoc., Inc.* (7th Cir. 2003) 330 F.3d 991, 995, and *Russell v. Equifax A.R.S.* (2d Cir. 1996) 74 F.3d 30, 36; *White v. First Step Group LLC* (E.D.Cal., Sept. 19, 2017, No. 2:16-cv-02439-KJM-

---

[8] As the Midland parties acknowledge, because section 1788.17 incorporates provisions of the FDCPA, case law interpreting the FDCPA applies to Rosenthal Act claims. (*Kazerouni v. LVNV Funding, LLC* (C.D.Cal., Dec. 17, 2014, No. SACV 14-01282-CJC (JCCx)) 2014 U.S.Dist. LEXIS 201219 at p. *4 ["The Rosenthal Act incorporates the FDCPA and makes a violation of the FDCPA actionable under California law"].)

GGH) 2017 U.S.Dist. LEXIS 153569 at pp. *25–*26 [debt collector's "argument that it was entitled to reasonably rely on the debt amount as reported to it . . . is unavailing in the face of the FDCPA as a strict liability statute that does not require the collector's knowing or intentional violation"]; *Gonzalez v. Cullimore* (Utah 2018) 417 P.3d 129, 132, 139–140 [the "overwhelming majority of jurisdictions . . . have almost unanimously held that the FDCPA is a strict liability statute . . . [a]nd most . . . have explicitly stated that [title 15 United States Code] § 1692e is a strict liability provision" and that " 'a consumer need not show intentional conduct by the debt collector to be entitled to damages' "].)

Further, two unpublished federal district court cases[9] have recognized that an FDCPA claim can be brought under title 15 United States Code section 1692e(10) based on a false representation about service of process, even if made unknowingly. In *Hooper v. Midland Funding, LLC* (N.D.Ala., July 30, 2021, No. 2:19-cv-01601-HNJ) 2021 U.S.Dist. LEXIS 142587, Hooper sued Midland Funding for violating the FDCPA based on the contention that Midland Funding failed to effect service of process on him in a prior state court collection lawsuit. (*Hooper*, at pp. *1–*2.) He contended that Midland Funding "filed a false proof of service in the collection action, which enabled it to obtain a default judgment and ultimately garnish his wages." (*Id.* at p. *2.) In considering Midland Funding's motion for summary judgment and Hooper's motion for partial summary judgment (*ibid.*), the district court rejected Midland Funding's contention that Hooper's claim failed for lack of evidence that Midland Funding *knowingly* filed a falsified service return form

---

[9] We may cite unpublished federal cases as persuasive authority without violating the California Rules of Court. (*Farm Raised Salmon Cases* (2008) 42 Cal.4th 1077, 1096, fn. 18; *Nungaray v. Litton Loan Servicing, LP* (2011) 200 Cal.App.4th 1499, 1501, fn. 2.)

because, the court determined, the FDCPA " 'typically subjects debt collectors to liability even when violations are not knowing or intentional.' " (*Hooper*, at p. *18, quoting *Owen v. I. C. Sys., Inc.* (11th Cir. 2011) 629 F.3d 1263, 1270.) Although the court ultimately granted Midland Funding's motion for summary judgment and denied Hooper's motion for partial summary judgment on other grounds (*Hooper v. Midland Funding, LLC*, *supra*, at pp. *19–*36), it concluded that "Midland's good faith bears no relevance upon the issue whether it may incur liability for filing the allegedly falsified service return form." (*Id*. at p. *18.)

Similarly, in *Mirshafiei v. Legal Recovery Law Offices, Inc.* (C.D.Cal. Oct. 5, 2016, No. SACV- 5-00873-CJC (DFMx)) 2016 U.S.Dist. LEXIS 143625, Mirshafiei sued Legal Recovery Law Offices, Inc. (Legal Recovery) for violating the FDCPA, including under title 15 United States Code section 1692e, for filing an invalid proof of service with the state court. (*Mirshafiei*, at pp. *3–*6.) Legal Recovery or its process server filed a proof of service of summons in a state court action filed by Legal Recovery against Mirshafiei to recover a debt, which proof of service represented that substituted service had been effected on Mirshafiei, although she "had not lived at the address listed on the proof of service for two years, as the property went through foreclosure." (*Id*. at p. *4.) In granting Mirshafiei's motion for partial summary judgment in substantial part, the district court concluded that there was "no genuine dispute of material fact that the proof of service was a 'false representation' that [Mirshafiei] had been properly served, and that [Legal Recovery] specifically employed this false representation to collect a debt against [her]." (*Id*. at pp. *13–*14, see p. *31.) The court rejected Legal Recovery's argument that "it was unaware that [Mirshafiei] did not reside at

that address at that time" because "[t]he FDCPA does not require knowledge." (*Id.* at p. *14.)

Based on this well-established body of case law, we hold that section 1788.17, by its incorporation of title 15 United States Code section 1692e, permits a Rosenthal Act plaintiff to state a prima facie case for liability where a defendant *unknowingly* made or relied on a false representation about the legal status of a debt or employed a false representation as a means to attempt the collection of a debt.

But we so hold with a caveat. The courts in *Hooper* and *Mirshafiei* categorically rejected defense attempts to argue that violations of section 1692e of the FDCPA must be knowing and intentional, which is consistent with the terminology of "strict liability" that may be found in the body of authority of which they are part. But that only means scienter is not a claim element that the plaintiff must prove to establish liability. The FDCPA recognizes an "exception to the strict liability imposed upon debt collectors by the FDCPA." (*Picht v. Jon R. Hawks, Ltd.* (8th Cir. 2001) 236 F.3d 446, 451.) A debt collector may not be held liable under the FDCPA if it shows by a preponderance of the evidence that the alleged FDCPA violation "was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." (15 U.S.C. § 1692k(c); *Fox v. Citicorp Credit Servs.* (9th Cir. 1994) 15 F.3d 1507, 1514.) This exception "is an affirmative defense, for which [the debt collector] has the burden of proof at trial." (*Fox*, at p. 1514.)

So too with the Rosenthal Act. Under section 1788.30, subdivision (e), "A debt collector shall have no civil liability to which such debt collector might otherwise be subject for a violation of this title, if the debt collector shows by a preponderance of evidence that the violation was not intentional

33

and resulted notwithstanding the maintenance of procedures reasonably adapted to avoid any such violation." Because, as under section 1692k(c) of the FDCPA, the burden of proof is expressly allocated to the alleged debt collector, section 1788.30, subdivision (e) provides an affirmative defense that must be proved. (*Sargent Fletcher, Inc. v. Able Corp.* (2003) 110 Cal.App.4th 1658, 1668 ["the defendant bears the burden of proof on new matter and affirmative defenses"].)

The Midland parties did not invoke section 1788.30, subdivision (e), in the trial court and do not raise it on appeal. At this stage, therefore, we deal only with whether Young mounted a prima facie case of liability under section 1788.17. We do not address and express no view about whether, as the case proceeds, the Midland parties may successfully pursue a defense under section 1788.30, subdivision (e).

> *iv. Young Made a Sufficient Showing Because Civil Code Section 1788.17's "Strict Liability" Standard Controls over Civil Code Section 1788.15, Subdivision (a)'s "Knowledge" Standard*

Our holding on the issue of scienter does not complete our inquiry. According to the Midland parties, "[o]ther than Section 1788.15, no provision of the Rosenthal Act imposes liability for continuing to prosecute a collections action or executing a judgment when a proof of service might later be proven inaccurate." This is incorrect. In our view, Young can state—and has stated—a prima facie Rosenthal Act cause of action under section 1788.17 based on the Midland parties' purportedly false representations about service of process on Young in 2009, even if unknowing, because of section 1788.17's incorporation of section 1692e of title 15 of the United States Code, a "strict liability" statute. The Midland parties insist that, regardless, section 1788.15, subdivision (a) controls over section 1788.17 because otherwise section 1788.15, subdivision (a) would be surplusage. This too is incorrect.

34

Section 1788.17 expressly states that "*[n]otwithstanding any other provision of this title*" (italics added), debt collectors are to comply with certain provisions of the FDCPA, including section 1692e of title 15 of the United States Code.

Midland's surplusage argument fails under conventional principles of statutory construction. (See *Timlick v. National Enterprise Systems, Inc.* (2019) 35 Cal.App.5th 674, 682–683 [using standard tools of statutory interpretation to analyze whether the enactment of section 1788.17, with its incorporation of FDCPA provisions, repealed section 1788.30, subd. (d)] (*Timlick*).) "Our primary task 'in interpreting a statute is to determine the Legislature's intent, giving effect to the law's purpose. [Citation.] We consider first the words of a statute, as the most reliable indicator of legislative intent. [Citation.]' [Citation.] We construe the statute's words in context, harmonizing statutory provisions to avoid absurd results." (*California Building Industry Assn. v. State Water Resources Control Bd.* (2018) 4 Cal.5th 1032, 1041.) "We may not, under the guise of construction, rewrite the law or give the words an effect different from the plain and direct import of the terms used." (*California Fed. Savings & Loan Assn. v. City of Los Angeles* (1995) 11 Cal.4th 342, 349.) "[A]n interpretation that renders other provisions ineffective or nugatory should be avoided," however. (*Hoitt v. Department of Rehabilitation* (2012) 207 Cal.App.4th 513, 523.)

Mindful of these principles, we reject the Midland parties' surplusage argument for two reasons. First, we are not persuaded that sections 1788.15, subdivision (a) and 1788.17 are directly in conflict in all instances. That a debt collector cannot attempt to collect a debt via judicial proceedings when the debt collector knows service of process has not been legally effected (as provided for in section 1788.15, subdivision (a)) does not necessarily mean the

debt collector is entitled to unintentionally make false statements about service in a court proceeding (as prohibited by section 1788.17). The former statute regulates a debt collector's *employment* of a legal proceeding; the latter regulates that collector's *representations* in, among other things, such proceedings. Thus, section 1788.15 prohibits a debt collector from employing a lawsuit in which it knows service was not effected even if it does not make any false representations regarding service; section 1788.17 does prohibit any such activity.

In *Timlick*, our colleagues in Division Three faced a similar issue when they considered whether the Legislature's enactment of section 1788.17, with its incorporation of certain FDCPA remedies provisions, repealed the "cure" provision contained in subdivision (d) of section 1788.30, also a part of the Rosenthal Act.[10] The *Timlick* court concluded, based on the plain language of the statute, legislative history and similar Ninth Circuit case law, that section 1788.17 does not repeal section 1788.30 subdivision (d) because the former incorporates FDCPA *remedies* while the latter provides certain *defenses*. (*Timlick*, *supra*, 35 Cal.App.5th at pp. 682–685.)

Here, Young's contentions focus on the Midland parties' representations in, not their employment of, the lawsuit Midland Funding filed against her in 2009. Similar to those in *Timlick*, Young's contentions necessarily implicate section 1788.17's prohibition against false representations, but do not necessarily implicate section 1788.15,

---

[10] Section 1788.30, subdivision (d) provides, "A debt collector shall have no civil liability under this title if, within 15 days either after discovering a violation which is able to be cured, or after the receipt of a written notice of such violation, the debt collector notifies the debtor of the violation, and makes whatever adjustments or corrections are necessary to cure the violation with respect to the debtor."

subdivision (a)'s prohibition against a debt collector's employment of a legal proceeding knowing service has not been effected. That is why allowing Young to maintain a claim against the Midland parties under section 1788.17 does not necessarily render section 1788.15, subdivision (a) surplusage as the Midland parties contend.

Second, section 1788.17 expressly states, "*Notwithstanding any other provision of this title*, every debt collector collecting or attempting to collect a consumer debt shall comply with the provisions of Sections 1692b to 1692j, inclusive, of . . .Title 15 of the United States Code." (Italics added.) This introductory phrase is determinative here. "When the Legislature intends for a statute to prevail over all contrary law, it typically signals this intent by using phrases like 'notwithstanding any other law' or 'notwithstanding other provisions of law.' " (*In re Greg F.* (2012) 55 Cal.4th 393, 406.) Accordingly, courts have held regarding a variety of subjects that a provision that includes such a phrase controls over other provisions of law regarding the same subject.

The court in *Molenda v. Department of Motor Vehicles* (2009) 172 Cal.App.4th 974 summarized some of this law: "In *People v. DeLaCruz* (1993) 20 Cal.App.4th 955, 963, the court explained that the language 'notwithstanding other provisions of law' in Penal Code section 12403.7 is a 'term of art' that 'has been read as an express legislative intent to have the specific statute control despite the existence of other law which might otherwise govern.' (Accord, *People v. Franklin* (1997) 57 Cal.App.4th 68, 73–74 [interpreting Pen. Code, § 667, subds. (c), (d), (f)(1)].) In *California Housing Finance Agency v. E.R. Fairway Associates I* (1995) 37 Cal.App.4th 1508, 1515–1516, the court explained: " 'The introductory phrase of [Health and Safety Code] section 51205(f), "[n]otwithstanding any other provision of

law," qualifies the operative language of the section entitling the prevailing party to recover "costs and reasonable attorney's fees." Thus "any other provision of law" relating to costs, to the extent contrary to or inconsistent with [Health and Safety Code] section 51205(f), is subordinated to the latter provision.' " (*Molenda*, at p. 995.)

As the *Timlick* court mentioned, two Ninth Circuit cases have relied on the "notwithstanding" language in section 1788.17 to conclude that section 1788.17, with its incorporation of certain FDCPA remedies provisions, "nullified" certain limitations on remedies contained in section 1788.30. (*Timlick*, *supra*, 35 Cal.App.5th at pp. 682–683, citing *Afewerki v. Anaya Law Group* (9th Cir. 2017) 868 F.3d 771, 779 and *Gonzales v. Arrow Financial Services, LLC* (9th Cir. 2011) 660 F.3d 1055, 1065.) We agree with and adopt this interpretation of the Rosenthal Act here. Based on the plain meaning of the introductory phrase of section 1788.17, i.e., "[n]otwithstanding any other provision of this title, every debt collector collecting or attempting to collect a consumer debt shall comply with the provisions of Sections 1692b to 1692j, inclusive, of . . . Title 15 of the United States Code," we conclude the Legislature intended that section 1788.17 control to the extent it conflicts with section 1788.15, subdivision (a).[11]

---

[11] "The Legislature is presumed to be aware of all laws in existence when it passes or amends a statute." (*In re Greg F.*, *supra*, 55 Cal.4th at p. 407.) Given this presumption, section 1788.17's enactment more than two decades after section 1788.15 (Stats. 1999, ch. 319, § 2, p. 2469 [§ 1788.17]; Stats. 1977, ch. 907, § 1, p. 2776 [§ 1788.15]) further indicates the Legislature's intention that it controls to the extent it is inconsistent with section 1788.15, subdivision (a). (See *Canteen Corp. v. State Bd. of Equalization* (1985) 174 Cal.App.3d 952, 960 ["when two laws upon the same subject, passed at different times, are inconsistent with each other, the one last passed must prevail"]; *Western Mobilehome Assn. v. County of San Diego* (1971) 16 Cal.App.3d 941, 948 [same].)

Accordingly, because Young made a prima facie showing that the Midland parties made a false representation that substituted service was effected on her in 2009, even if it was an unknowing false representation, the court should have denied the Midland parties' anti-SLAPP motions regarding her Rosenthal Act cause of action.

### e. *There Is No Merit to the Argument That, Under* Baral v. Schmidt, *We Must Address What the Midland Parties Characterize as Young's "Derivative Claims"*

Included in Young's Rosenthal Act cause of action is a single paragraph, paragraph 50, consisting of a series of five, one-sentence subparagraphs, lettered (a) through (e), alleging various violations of the Rosenthal Act.[12] While the parties' primary focus here on appeal has been on section 1788.17 (misrepresentation that service was properly effected), in paragraph 50 of her complaint Young also alleges that the Midland parties violated sections 1788.15, subdivision (a) (alleged pursuit of a collection action when knowing that service had not been effected), 1788.13, subdivision (e) (misrepresentation that the alleged debt may be increased by the addition

---

[12] "a. Defendants made and used false, deceptive, and misleading representations in an attempt to collect the debt, in violation of Cal. Civil Code § 1788.17; [¶] b. Defendants misrepresented the character, amount, or legal status of the debt, in violation of Civil Code §§ 1788.13(e) and 1788.17; [¶] c. Defendants attempted to collect the debt from Plaintiff without notice required by both the United States Constitution and the Constitution of the State of California, an action that cannot lawfully be taken, in violation of Civil Code §§ 1788.13(e) and 1788.17; [¶] d. Defendants attempted to collect a consumer debt from Plaintiff by means of judicial proceedings after Defendants knew that service of process on Plaintiff had not been legally effected, in violation of Civil Code § 1788.15(a) and 1788.17; [¶] and e. Defendants attempted to collect interest, fees, or other charges from Plaintiff that are not expressly authorized by the agreement creating the debt or otherwise permitted by law, in violation of Civil Code §§ 1788.13(e), 1788.14(b), and 1788.17." (Footnotes omitted.)

of certain fees or finance and other charges if they may not be legally added to the existing obligation) and 1788.14, subdivision (b) (collecting or attempting to collect fees, charges, or other expenses incurred by the debt collector).

In footnotes appended to paragraph 50, Young cites, as additional legal authority for this potpourri of statutory violations, 15 United States Code sections 1692e (use of false, deceptive, or misleading representations as a means of debt collection), 1692e(2) (falsely representing the character, amount, or legal status of any debt as a means to collect the debt), 1692e(5) (threatening to take legal action that cannot legally be taken or that the creditor does not intend to take), 1692e(10) (the use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer) and 1692f (use of unfair or unconscionable means to collect or attempt to collect any debt). Thus, together with the statutes cited in the footnote, Young pleads the violation of eight distinct statutory provisions, each having its own substantive elements.

In their responding brief, the Midland parties characterized the various legal bases for these claims of statutory violation other than under section 1788.17 as Young's "derivative claims" of liability under the Rosenthal Act. Arguing in the alternative, they contended that, even if we determined Young's section 1788.17 claim had minimal merit and may proceed, we must address her "derivative claims" of liability and determine whether she made a showing of minimal merit in support of each one of them. We declined to do so in the original opinion filed in this appeal, explaining, "If the plaintiff 'can show a probability of prevailing on *any part of its claim*, the cause of action is not meritless' and will not be stricken." (*Oasis*, *supra*, 51 Cal.4th at p. 820.) For the first time in the briefing on this appeal, the Midland parties cited

*Baral*, *supra*, 1 Cal.5th 376, in a petition for rehearing. They asked that we grant rehearing because, according to them, the passage from *Oasis* that we cited was overruled sub silentio in *Baral*. That part of the *Oasis* opinion, the Midland parties argued, relied on the so-called "*Mann* rule," enunciated in *Mann v. Quality Old Time Service, Inc.* (2004) 120 Cal.App.4th 90 (*Mann*), which the Supreme Court expressly disapproved in *Baral*. (*Baral*, *supra*, 1 Cal.5th at p. 396 fn. 11.) We granted rehearing to consider this issue, and we now reject the Midland parties' argument that we must address each of what they characterize as Young's "derivative claims."

First, the allegations in subparagraphs (a) through (e) of paragraph 50 are, for the most part, purely legal in nature. These allegations supply citations to the specific sections of the Rosenthal Act and the FDCPA that Young claims were violated. A motion to strike under Code of Civil Procedure section 425.16 does not lie as a tool to strip from an offending pleading legal theories pleaded in the form of bare citations to statutes or other legal authority. To the extent Young sought to "dress up" the core allegations supporting her section 1788.17 theory with various statutory citations that have nothing to do with the factual basis of that claim, the Midland parties' remedy is to seek to strike these conclusory legal allegations as extraneous matter, or even to file a Code of Civil Procedure section 128.7 sanctions motion, if they can show there was no good faith basis for pleading them and their assertion served only to cause expense and delay.

In *Baral*, our Supreme Court addressed what it described as " 'the mixed cause of action' problem." (*Baral*, *supra*, 1 Cal.5th at p. 394.) Framed by the court, that problem is this: "What showing is required of a plaintiff with respect to a pleaded cause of action that includes allegations of both protected and unprotected activity?" (*Id.* at p. 385.) Prior to *Baral*, some

41

courts (e.g., *Mann*) held that, so long as the plaintiff could show minimal merit to allegations of unprotected conduct, a "mixed cause of action" could proceed, despite the inclusion of allegations of protected conduct in the same cause of action. Other courts criticized *Mann* (e.g., *Wallace v. McCubbin* (2011) 196 Cal.App.4th 1169, disapproved on other grounds in *Baral*, at pp. 391 & 396, fn. 11) and some disagreed with it outright and held to the contrary (e.g., *Cho v. Chang* (2013) 219 Cal.App.4th 521 (*Cho*).) According to the *Cho* court, allegation-by-allegation parsing was required. (*Id*. at p. 527.) Overruling *Mann* on this point, the *Baral* court sided with the *Cho* line of authority.

*Baral* requires courts to "analyze each claim for relief—each act or set of acts supplying a basis for relief, of which there may be several in a single pleaded cause of action—to determine whether the acts are protected and, if so, whether the claim they give rise to has the requisite degree of merit to survive the motion." (*Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1010 (*Bonni*).) As applied in *Bonni* and other cases (see *Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 884, 898; *Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1062–1063), this analysis focuses *factually* on specific "acts," "activities," or "conduct" that make up the elements of a pleaded claim. That is a different problem than the one we have here. We do not doubt that scattershot citation to inapposite legal authority, unsupported by facts, can be a serious problem in civil litigation, but the anti-SLAPP statute is concerned with a different kind of abuse.

Second, to the extent there is factual content to the allegations in paragraph 50, subdivisions (a) through (e)—some of which are the same factual allegations supporting Young's section 1788.17 cause of action (e.g.

42

the claimed violation of section 1788.15, subdivision (a))—the anti-SLAPP motion filed by the Midland parties failed to dissect each of the eight legal theories presented, element-by-element, so that Young was on notice of exactly what elements of which legal theories the Midland parties claimed were based on protected conduct and lacked minimal merit. Summarized generally, the facts alleged in paragraph 50 break down into three categories. First, Young alleged—as she did in the introduction and background sections of the complaint—that the Midland parties pursued a lawsuit against her based on a false proof of service of summons (para. 50(a), (c), (d)), and did so with knowledge that she had not been properly served (para. 50(d)). Second—going beyond her background allegations—Young alleged that, while attempting to collect a debt from her, the Midland parties misrepresented "the character, amount, or legal status of the debt" (para. 50(b)). And third—here, too, going beyond her background allegations— Young alleged that, without a legal basis for doing so, the Midland parties sought to "collect interest, fees, or other charges" from her (para. 50(e)).

We can surmise how these factual allegations probably align, element-by-element, with the legal theories Young is pursuing, but we have no obligation to do so on appeal. *Baral* was a step-two anti-SLAPP case like this one, but there the parties conceded, and the Supreme Court based its analysis on, the predicate assumption that it was dealing with "mixed causes of action." The court recognized that two prior Supreme Court cases—*Oasis* and *Taus*, *supra*, 40 Cal.4th 683, neither of which involved mixed causes of action—shed light on whether the *Mann* analysis was correct, even though the issue was not directly presented in those cases. It discussed these cases in some depth. (*Baral*, *supra*, 1 Cal.5th at pp. 388–392.) The court pointed out that one of these cases (*Taus*) undertakes "an exhaustive analysis of

43

alternate theories of liability, and their application to particular instances of alleged tortious behavior" (*Baral, supra*, 1 Cal.5th at p. 390), while the other (*Oasis*) simply concludes that once a plaintiff has demonstrated a cause of action has minimal merit under one asserted legal theory, it is unnecessary to reach the rest of the anti-SLAPP movant's attack on different legal grounds.

*Baral* reconciles *Taus* and *Oasis* based on "the way the parties framed the issues" on those respective records. (*Baral, supra*, 1 Cal.5th at p. 391.) In *Taus*, the anti-SLAPP movant sought to strike particular kinds of alleged conduct, while in *Oasis* the anti-SLAPP movant moved to strike the entire complaint. Reading *Oasis* as having been driven by the procedural posture in that case,[13] the *Baral* court does not question the *Oasis* holding or cast doubt upon it. The court simply states that Court of Appeal decisions reading *Oasis* broadly to endorse *Mann*—because *Oasis* cites *Mann* in its background discussion of applicable law—were incorrect (e.g., *Wallace v. McCubbin, supra*, 196 Cal.App.4th 1169). (*Baral*, at p. 396, fn. 11.) That left *Oasis* still standing. It remains good law, while the *Mann* line of Court of Appeal authority does not. As we see it, the issue presented by the *Midland* parties

---

[13] The *Oasis* court stated as a preliminary matter that, "[o]rdinarily we would proceed to consider the two prongs in order," but that "[i]n light of this court's 'inherent, primary authority over the practice of law' [citation] . . . we will proceed in these particular circumstances directly to the second prong, inasmuch as we have readily found that Oasis has demonstrated a probability of prevailing on its claims." (*Oasis, supra*, 51 Cal.4th at p. 820.) It then stated that "[t]he complaint identifies a number of acts of alleged misconduct and theories of recovery, but for purposes of reviewing the ruling on an anti-SLAPP motion, it is sufficient to focus on just one." (*Id*. at p. 821.) Although the court cited *Mann* in its recitation of applicable background principles, its choice to proceed in this manner appears to have been based on its felt need to address an issue that was peculiarly within its constitutional purview (*Obrien v. Jones* (2000) 23 Cal.4th 40), rather than the *Mann* rule.

on rehearing requires us to decide whether our case is more like *Taus* or *Oasis*, just as the Supreme Court did on the record presented in *Baral*. We conclude this case is more like *Oasis*. On this procedural record, the Midland parties failed to bear their initial burden of framing an element-by-element anti-SLAPP attack on Young's "derivative claims" and preserving that attack on appeal.

In the trial court, MCM's anti-SLAPP motion sought to strike the entire complaint. What Midland Funding described as its "more detailed" "companion" motion took the same approach, but in its supporting brief Midland Funding also cited *Baral* and argued in the alternative for the striking of certain "discrete claims" within various of Young's causes of action, without directly making a request for that form of relief in its notice of motion or in the motion itself.[14] Midland Funding made no effort to explain, based on an element-by-element review for each of the challenged statutory legal theories, why these "discrete claims" are protected. MCM's motion joined Midland Funding's indirect *Baral*-style alternative request, but with no additional argument. Without citing *Baral*, the responding briefing on appeal filed jointly by the Midland parties continues to focus primarily on why the entire complaint was subject to a motion to strike. The Midland parties at one point restate the alternative argument made by Midland Funding below that Young's "derivative claims" should be stricken. But here again, they make no attempt to align discrete factual allegations made by

---

[14] MCM, in its supporting brief, incorporated by reference Midland Funding's oblique reference to a right to relief under *Baral*, joining what it described as Midland Funding's arguments that "each" of Young's claims were "defective." There was no indication in MCM's notice of motion that it sought anything other than an order striking Young's complaint.

45

Young, element-by-element, with the listed "derivative" Rosenthal Act theories of liability.

As the Supreme Court has recently held in *Bonni*, *supra*, 11 Cal.5th 995, if a moving party has not met its "first-step burden" of "identif[ying] how the speech or conduct underlying [challenged] . . . claims is protected activity" (*id.* at p. 1011), "the nonmovant should not be put to the burden of parsing the cause of action in the moving party's stead. . . . [T]his problem already has a solution under well-established anti-SLAPP law—namely, attention to the allocation of the applicable burden of proof. If a cause of action contains multiple claims and a moving party fails to identify how the speech or conduct underlying some of those claims is protected activity, it will not carry its first-step burden as to those claims. . . . The nonmovant is not faced with the burden of having to make the moving party's case for it." (*Ibid.*) We add here that, on appeal, the reviewing court should not be put to that burden either. A concession that protected conduct is involved in the context of a motion to strike the entire complaint tells us nothing about whether there is a dispute on that issue when it comes to individual allegations.

For a court to analyze a *Baral*-style motion to strike properly, the moving party must address the issue specifically—in the trial court, and on appeal. Thus, whether we describe what we have here as a failure to meet the initial first-step burden or a forfeiture on appeal, the problem for the Midland parties in asking that we order Young's "derivative claims" to be stricken under *Baral* is that, procedurally, the request has not been properly framed for us at this stage of the proceedings. The argument the Midland parties make is highly general, set forth in a few brief sentences in their responding brief, and directed in the alternative to all "derivative claims" as an aggregate. Upon consideration of the rehearing petition and supplemental

46

briefing following our rehearing grant, we understand and can see that there *may* be *Baral*-style, allegation-by-allegation arguments to be made on this record, but we will adhere to our original determination on the "derivative claims" and now hold that we need not address this line of argument simply because the Midland parties gestured in that direction in a cursory request made in the alternative in their responding brief.[15]

### 2. Young's Rosenthal Act Cause of Action Was Not Time-Barred

Finally, the Midland parties argue that Young's Rosenthal Act cause of action was time-barred under the Rosenthal Act's one-year statute of limitation.

---

[15] There is no question that, procedurally, *Baral* was a watershed decision all litigants must be familiar with when making and opposing anti-SLAPP motions. We expect that our holding rejecting the Midland parties' effort to pursue a *Baral*-style challenge as an afterthought on appeal will underscore the importance of framing such challenges properly, and if an appeal is pursued, preserving them for review. So that courts may scrutinize whether "[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech . . . shall be subject to a special motion to strike" (Code Civ. Proc., § 425.16, subd. (b)(1)) at the level of granularity *Baral* contemplates, we take this opportunity to suggest that any litigant seeking *Baral*-style, allegation-by-allegation relief should (1) make clear in its notice of motion that it seeks an order striking discrete allegations within a cause of action or within causes of action, and (2) set forth plainly and concisely in its moving papers exactly what factual allegations it wishes to have stricken, in a table or chart showing exactly how each such allegation aligns with elements of the cause of action or causes of action the motion attacks. (Cf. Code Civ. Proc., § 437c, subd. (b)(2)–(3) [requirement of separate statements of undisputed and disputed facts in summary judgment procedure].) That will not only allow a determination to be made about whether the movant has borne its initial burden of proof, but will place the non-moving party on notice of what aspects of its pleading are being attacked, thus allowing that party, if possible, to explain why the facts identified are incidental background matter (*Bonni, supra,* 11 Cal.5th at p. 1012) or are otherwise unprotected.

47

The Rosenthal Act provides that, in order to recover actual and statutory damages or attorney fees and costs, "[a]ny action under this section may be brought in any appropriate court of competent jurisdiction in an individual capacity only, within one year from the date of the occurrence of the violation." (§ 1788.30, subd. (f); see *Komarova, supra,* 175 Cal.App.4th at p. 343 ["Actions under the Rosenthal Act 'may be brought . . . within one year from the date of the occurrence of the violation.' (§ 1788.30, subd. (f).)"].)

As we have discussed, in her opposition to the anti-SLAPP motions, Young argued that the Midland parties falsely represented to the superior court in 2009 that substituted service had been effected on Young, which false representation violated section 1788.17, and, further, that "[e]ach subsequent representation by [the Midland parties] in an attempt to collect the Judgment necessarily incorporates this false representation and becomes another false representation in an attempt to collect a debt." Young further argued that her Rosenthal Act cause of action was not time-barred by the one-year statute of limitations contained in section 1788.30, subdivision (f) under the "continuing violation theory." Relying on a continuing violation theory, Young cited the holding on this point in *Komarova,* which we described above. (*Komarova, supra,* 175 Cal.App.4th at pp. 343–344.) And she renews the argument here on appeal.

We agree that *Komarova* applies. The record contains considerable evidence of a continuing course of conduct by the Midland parties to parlay their allegedly false representation about service to obtain and then collect on the 2010 default judgment until within a year of Young's filing of her lawsuit in December 2019. The record indicates that after they obtained the default judgment, the Midland parties continued to act to collect on the judgment on a number of occasions. Specifically, according to a Midland Funding attorney

48

who submitted a declaration in support of the anti-SLAPP motions, she began working with the law firm serving as Midland Funding's outside counsel on the Young case in 2013 and "assumed attorney management" of Young's account at that time. In 2016, she moved to another firm, which "was tasked with handling post-judgment enforcement efforts" on Young's account. Between July 2013 and July 2019, "[she], or her firms' support staff, . . . served [Young] with post-judgment notices at least a half dozen times at her [Burlingame] address . . . . These notices included settlement letters, memorandums of costs, and a substitution of attorney." Then, in July 2019, her firm obtained the wage garnishment order and caused it to be served on Young's employer at the time.

The Midland parties, in challenging Young's contention that their refusal to withdraw their wage garnishment order after Young's attorney told them she had never been served was itself an effort to collect on the debt (an issue which we need not resolve in light of our conclusion that the Midland parties' "knowledge" that service was not effected is of no consequence to Young's Rosenthal Act claim under section 1788.17), argue that "garnishment proceedings are against an employer and not 'against a consumer,' " citing *Muhammad v. Reese Law Grp., APC* (S.D.Cal., Oct. 12, 2017, No. 16cv2513-MMA (BGS)) 2017 U.S.Dist. LEXIS 169082 at page *21. "Therefore," the Midland parties continue, "at most, the garnishment constituted a collection action against *Young's employer* and not Young."

The Midland parties' contention that their effort to garnish Young's wages was as a matter of law not part of any collection actions against her is directly contradicted by the text and legislative history of the Rosenthal Act. Specifically, section 1788.10, a part of the Act, provides, "No debt collector shall collect or attempt to collect a consumer debt by . . . [¶] . . . [¶] (e) [t]he

49

threat to any person that nonpayment of the consumer debt may result in . . . the *garnishment* or attachment of wages of the debtor, unless such action is in fact contemplated by the debt collector and permitted by the law." (Italics added.)

Further, the legislative history of section 1788.17, of which we take judicial notice (see *Voris v. Lampert* (2019) 7 Cal.5th 1141, 1147, fn. 5 [court can take judicial notice of published legislative history]), includes repeated references to the view of supporters that the provision was needed to address certain "growing problem[s]," including " 'misrepresentations, such as threats . . . to garnish wages . . . when no such intent or rights exists.' " (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 969 (1999–2000 Reg. Sess.), as amended May 18, 1999, p. 4; Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 969 (1999–2000 Reg. Sess.), as amended July 15, 1999, pp. 6–7.)

The case relied on by the Midland parties, *Muhammad v. Reese Law Grp.*, *supra*, 2017 U.S.Dist. LEXIS 169082, involved FDCPA claims, not Rosenthal Act claims. Specifically, it involved section 1692i of title 15 of the United States Code, a part of the FDCPA. Section 1692i requires a debt collector who brings a legal action on a debt "against any consumer" to bring it in a particular "judicial district," and the debtor argued that this provision applied to a wage garnishment order issued where the debtor neither resided nor worked. (*Muhammad*, at pp. *14–*21.) The federal district court in *Muhammad*, without considering the Rosenthal Act but instead looking to our Code of Civil Procedure, held that title 15 United States Code section 1692i did not apply because wage garnishment proceedings were not against a "consumer" under California law. (*Muhammad*, at pp. *19–*21.) This, of course, does not address whether efforts to garnish a consumer debtor's

50

wages are regulated *by the Rosenthal Act*. In any event, an unpublished federal district court case is not persuasive in the face of binding California authority. (*Balsam v. Trancos, Inc.* (2012) 203 Cal.App.4th 1083, 1100.) We read California law differently than did the *Muhammad* court and therefore find that case unpersuasive.

In short, we conclude that Young's Rosenthal Act cause of action was not time-barred because there is evidence that the Midland parties engaged in a continuing course of conduct until within one year of Young filing suit, including their efforts to garnish Young's wages. The court's judgment on this cause of action is therefore reversed. Further, we vacate that part of the trial court's judgment awarding the Midland parties' attorney fees and remand this matter to the trial court to reconsider, consistent with our opinion, whether or not to award attorney fees.

**C. *Young's Appeal from the Trial Court's Order Staying the Midland Parties' Attorney Fee Motion***

Young argues that the trial court erred in awarding the Midland parties attorney fees in the absence of a showing that she did not act in good faith in prosecuting her lawsuit under the Rosenthal Act; that the trial court erred by awarding attorney fees to the Midland parties in any event; and that the trial court at most should have awarded $4,023.50 in attorney fees to the Midland parties. We need not address any of these issues in light of our vacating of that part of the trial court's judgment regarding its award of attorney fees to the Midland parties.

### III. DISPOSITION

To the extent the court granted the anti-SLAPP motions with respect to Young's equitable claims, we reverse and remand with directions to dismiss those claims as moot. The portion of the judgment dismissing Young's Rosenthal Act cause of action is reversed. The portion of the judgment

awarding the Midland parties attorney fees is vacated. The case is remanded to the trial court for further proceedings consistent with this opinion. Young is awarded costs of appeal.

STREETER, Acting P. J.

WE CONCUR:

POLLAK, J.*
GOLDMAN, J.

---

* Retired Presiding Justice of the Court of Appeal, First Appellate District, Division Four, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Trial Court:    San Mateo County Superior Court

Trial Judge:    Hon. Nancy L. Fineman

Counsel:    Consumer Law Center, Fred W. Schwinn, Raeon R. Roulston, Matthew C. Salmonsen for Plaintiff and Appellant.

Solomon Ward Seidenwurm & Smith, Thomas F. Landers, Mei-Ying Imanaka, Owen M. Praskievicz for Defendants and Respondents.